THOMAS, Judge.
 

 Bishop State Community College (hereinafter referred to as “BSCC” or “the college”) appeals a hearing officer’s decision to reinstate Dr. Michael Williams to his position as a nursing instructor after the college terminated his employment pursuant to the Fair Dismissal Act (hereinafter referred to as “the FDA”), § 36-26-100 et seq., Ala.Code 1975. We reverse the hearing officer’s decision and remand the cause for further proceedings.
 

 Dr. Williams holds bachelor’s, master’s, and doctoral degrees in nursing science; he has been a licensed, registered nurse since 1985. In 1990, he was employed by BSCC as a full-time instructor of nursing, and, three years later, he achieved nonpro-bationary (tenured) status. He is the only holder of a doctorate and the only male member on the nursing faculty. Much of the factual background relevant to this appeal is contained in
 
 Alabama Board of Nursing v. Williams,
 
 941 So.2d 990 (Ala.Civ.App.2005), and this opinion draws on that decision for the following summary of the facts.
 

 “[B]eginning in 1991, a series of complaints were lodged against Williams to the effect that he had sexually harassed female students at the College. The College investigated two of those complaints, in 1992 and in 1995, but ultimately concluded that they lacked evi-dentiary support beyond the accusers’ statements and determined that Williams should not be disciplined as to his employment. A third complaint, lodged in November 2000, was apparently not found to warrant discipline on the part of the College.
 

 “In 2001, the former husband of one of Williams’s students filed complaints with the President of the College, with the Alabama Department of Postsecond-ary Education, and with the Board [of Nursing] arising from Williams’s alleged amorous relationship with that student. Although the Department of Postsec-ondary Education concluded that Williams had not violated policies of the College or of the State Board of Education, the Board [of Nursing] undertook its own investigation of the sexual-harassment claims that had been brought against Williams.
 

 “In May 2002, the president of the College, after a hearing, indicated that Williams’s employment would be terminated effective May 27, 2002, ‘based
 
 *1155
 
 upon [his] continued insubordination and ineffective instruction.’ A letter sent by the president to Williams cited, as a basis for his termination, his having failed to complete an administrative assignment that he had received from the president and alluded to ‘several serious student complaints’ appearing in his personnel file, ‘including complaints of sexual harassment which are being investigated currently by the Alabama Board of Nursing.’ Williams later sought review of his termination from employment before a three-person employee-review panel, which was permitted under Ala.Code 1975, §§ 36-26-105 and 36-26-106, as they read in 2002 before the enactment of Act No. 2004-567, Ala. Acts 2004. The panel found that Williams had failed to complete an assignment as directed by the president of the College, had confronted a female coworker ‘in a manner unbecoming to a faculty member,’ and had arrived late to a mandatory meeting; however, exercising its prerogative to review Williams’s punishment
 
 de novo,
 
 the panel determined that ‘termination was not the proper punishment for th[o]se transgressions’ and instead imposed an unpaid 42-day suspension. On certiorari review, the Mobile Circuit Court entered a judgment affirming that determination, and this court, in turn, affirmed that judgment.
 
 Bishop State Cmty. Coll. v. Williams
 
 (No. 2021213, June 11, 2004), 915 So.2d 1184 (Ala.Civ.App.) (table), ce
 
 rt. denied,
 
 (No. 1031488, August 13, 2004) 920 So.2d 1142 (Ala.2004) (table).
 

 “On July 11, 2003, the Board [of Nursing] issued a ‘Statement of Charges and Notice of Hearing’ in which the Board ordered Williams to appear and show cause why his license to practice professional nursing should not be revoked on the basis that ‘[o]n multiple occasions from 1991 to 2001, [Williams] had engaged in inappropriate conduct of a sexual nature with students’ at the College. According to the [Nursing] Board’s statement and notice, Williams’s conduct constituted grounds for disciplinary action under § 34-21-25, Ala.Code 1975, and under Board [of Nursing] regulations barring, among other things, the exhibition of inappropriate or unprofessional conduct or behavior in the workplace. After a hearing before a hearing officer had been held, the Board [of Nursing] entered an order [on November 21, 2003,] containing findings of facts and conclusions of law; in its order, the Board [of Nursing] determined that Williams’s conduct warranted disciplinary action and imposed sanctions, including a 3-month suspension of his nursing license and a subsequent 24-month period of probationary licensure status.
 

 “Pursuant to § 41-22-20, Ala.Code 1975, Williams sought judicial review in the Montgomery Circuit Court of the [Nursing] Board’s order. After the parties had filed written submissions in support of their respective positions, the circuit court entered a judgment reversing the [Nursing] Board’s order as unlawful. The judgment did not cite any specific subdivision of § 41-22-20(k), Ala.Code 1975, which sets forth various grounds upon which an administrative agency’s order may be reversed. However, the judgment plainly indicates the circuit court’s agreement with Williams’s argument that the [Nursing] Board’s reliance upon the sexual-harassment charges lodged against Williams since 1991 was somehow violative of constitutional due-process guarantees; the judgment stated, in pertinent part, that ‘[e]ven though [the] College and the [Board of Nursing] are separate entities,
 
 *1156
 
 they are still both entities with the State of Alabama’ and ‘[t]he State of Alabama cannot have two bites at the apple.’ ”
 

 941 So.2d at 993-95. In
 
 Alabama Board of Nursing v. Williams,
 
 this court reversed the judgment of the Montgomery Circuit Court; we held that the Board’s disciplinary order was supported by substantial evidence. The Alabama Supreme Court denied certiorari review on May 12, 2006; Dr. Williams’s 90-day suspension began on that date, followed by 2 years’ probation.
 

 Shortly after the BSCC summer 2006 term began, Dr. Williams informed Barbara Powe, BSCC’s nursing-program director, that he “would not be able to work that particular semester because his license had been suspended after he lost an appeal with the Alabama Supreme Court.” Powe verified this information by telephoning Genell Lee, executive director of the Board of Nursing. Lee confirmed the fact that, according to Board of Nursing regulations, Dr. Williams could not teach while his nursing license was “encumbered,” and, she said, the Board considers a license that is subject to suspension or probation to be encumbered. Lee explained that, if BSCC allowed Dr. Williams to teach with an encumbered license, it could lose its program approval and its graduates would not be able to sit for the national licensing examination.
 

 Powe testified that Dr. Williams left the BSCC campus sometime after May 12, 2006, and she did not see him again until the beginning of the fall 2006 term. BSCC President, Dr. Yvonne Kennedy (hereinafter referred to as “President Kennedy”), testified that Dr. Williams normally taught classes during the summer term and that, when he did not show up to teach during the summer of 2006, she thought he had resigned his position as a nursing instructor as a consequence of the Nursing Board’s disciplinary order. Accordingly, she said, BSCC did not offer Dr. Williams a teaching contract for the academic year beginning with the fall 2006 term. In August 2006, however, Dr. Williams reported for duty for the fall term, and President Kennedy informed him that, based on what BSCC had been advised by the Board of Nursing, he was not permitted to teach while his license was in a probationary status.
 

 On September 13, 2006, Dr. Williams filed a direct appeal to the Chief Administrative Law Judge (“ALJ”) in the Attorney General’s Office of Administrative Hearings, pursuant to § 36-26-115, Ala.Code 1975, alleging that BSCC was attempting to terminate his employment without providing him with due process as required by the FDA. On October 30, 2006, the ALJ agreed and ordered BSCC to provide Dr. Williams with a hearing pursuant to § 36-26-104, Ala.Code 1975.
 

 On January 12, 2007, President Kennedy requested a declaratory ruling from the Board of Nursing as to the effect of the probationary status of Dr. Williams’s license on his ability to teach in its nursing program. On January 19, 2007, the Board issued a formal ruling stating that, pursuant to Rule 610-X-3-.02(5)(a), Ala. Admin. Code (Alabama Board of Nursing-Nursing Education Programs), the “[mjinimum qualifications of nurse faculty shall include [a]n unencumbered Alabama registered nurse license” and that “[a] nurse whose license is on probation is deemed to have an encumbered license.”
 

 An evidentiary hearing was held on March 29, 2007. At the hearing, BSCC offered and the hearing officer admitted into evidence the transcript of Dr. Williams’s healing before the Nursing Board that had culminated in the Nursing Board’s disciplinary order of November 21, 2003. On June 21, 2007, the hearing offi
 
 *1157
 
 cer issued a 43-page order that (1) reinstated Dr. Williams to his tenured employment as a nursing instructor at BSCC; (2) declared the Nursing Board’s November 21, 2003, disciplinary order “an absolute nullity”; (3) admonished the Nursing Board “for its role and having prostituted itself in this matter”; (4) ordered BSCC to pay Dr. Williams an attorney’s fee and costs; (5) assessed punitive damages in the amount of $10,000 against BSCC;
 
 [1]
 
 (6) ordered that Dr. Williams’s employment record be “purged of any and all matters at issue and discussed herein; most especially, his record is to be rendered clean with respect to any and all charges of sexual harassment, unfounded as they are”; and (7) “retain[ed] jurisdiction over the matter for purposes of clarification, interpretation and implementation of the award, and for any other purposes(s) as may be requested by the parties.”
 

 BSCC filed a timely notice of appeal to this court on July 13, 2007, enumerating special and important reasons for granting the appeal. On January 8, 2008, this court agreed to hear the appeal, and on July 22, 2008, the case was orally argued. Although BSCC raises 18 issues on appeal, our disposition of this case requires that we address only 2 issues, namely: (1) whether the hearing officer had the statutory authority or subject-matter jurisdiction to declare the November 21, 2003, disciplinary order of the Board of Nursing “an absolute nullity” and (2) whether the evidence supported the hearing officer’s finding that President Kennedy was motivated by personal reasons for terminating Dr. Williams’s employment.
 

 Standard of Review
 

 Section 36-26-104(b), Ala.Code 1975, provides that “[t]he decision of the hearing officer shall be affirmed on appeal unless the Court of Civil Appeals finds the decision arbitrary and capricious, in which case the court may order that the parties conduct another hearing consistent with the procedures of this article.”
 

 Analysis
 

 I.
 

 In an FDA case, the hearing officer’s statutory authority — and thus his subject-matter jurisdiction,
 
 see Ex parte Alabama Bd. of Exam’rs in Counseling,
 
 796 So.2d 355, 358 (Ala.2000) — is derived from two provisions of the FDA, § 36-26-102, Ala. Code 1975, and § 36-26-104(a), Ala.Code 1975. Section 36-26-102 states the grounds for termination of employment; it provides that a nonprobationary (tenured) employee shall not be terminated
 

 “except for failure to perform his or her duties in a satisfactory manner, incompetency, neglect of duty, insubordination, immorality, justifiable decrease in jobs in the system, or other good and just causes; provided, however, such termination of employment shall not be made for political or personal reasons on the part of any party recommending or voting to approve such termination.”
 

 Depending upon a hearing officer’s findings and conclusions with respect to whether an employer has stated and proved proper grounds for terminating an employee’s employment, a hearing officer is then empowered by § 36-26-104(a) to
 

 “determine which of the following actions should be taken relative to the employee: Termination of the employee, a suspension of the employee, with or without pay, a reprimand, other disciplinary action, or no action against the employee.”
 

 
 *1158
 
 Pursuant to § 36-26-102, the hearing officer in this case had the statutory-authority to determine whether BSCC had stated and proved proper grounds for terminating Dr. Williams’s employment. The college proposed to terminate Dr. Williams’s employment based on the charge of “failure to perform ... [his] duties in a satisfactory manner; neglect of duty, and/or other good and just causes,” specifically, that Dr. Williams “lack[ed] the required qualification for the position of nursing instructor inasmuch as [his] ... license is encumbered.” Pursuant to that charge, the hearing officer was authorized to review the evidence to determine whether Dr. Williams did, in fact, possess the qualifications to be a nursing instructor. That inquiry permitted the hearing officer to decide the predicate question of the meaning of an “encumbered” nursing license and to determine whether the Nursing Board’s interpretation — that a suspended or probationary license is an “encumbered” license — was reasonable. The hearing officer, however, did not decide those issues. Instead, he purported to readjudicate the disciplinary charges brought against Dr. Williams by the Board of Nursing in July 2003. The hearing officer read the transcript of the disciplinary proceedings before the Board of Nursing, reweighed the evidence that was before the Board, concluded that “the Board’s findings [did] not comport with the evidence,” and declared the Board’s November 21, 2003, disciplinary order a “nullity,” thereby purporting to set aside not only the Nursing Board’s order but also the judgment of this court, which had held that the Board’s order was supported by substantial evidence, and that of the Alabama Supreme Court, which had denied the writ of certiorari.
 
 [2]
 

 Dr. Williams argues that the college has waived any argument that it may have had as to the hearing officer’s
 
 use
 
 of the transcript of the disciplinary proceedings before the Board of Nursing by requesting that the hearing officer admit the transcript in evidence. In this case, the hearing officer had no subject-matter jurisdiction to revisit the disciplinary order of the Board of Nursing or the judgment of the appellate court that affirmed that order. “Lack of subject matter jurisdiction may not be waived by the parties and it is the duty of an appellate court to consider lack of subject matter jurisdiction
 
 ex mero motu.” Ex parte Smith,
 
 438 So.2d 766, 768 (Ala.1983) (citing
 
 City of Huntsville v. Miller,
 
 271 Ala. 687, 688, 127 So.2d 606, 608 (1958)).
 

 Neither § 36-26-102, nor § 36-26-104(a), nor any other provision of the FDA gives the hearing officer the authority to set aside the decision of an entity that is not the employer of the affected employee.
 

 “ ‘The rule which forbids the reopening of a matter once judicially determined by competent authority applies as well to the judicial and quasi-judicial acts of public, executive, or administrative officers and boards acting within their jurisdiction as to the judgments of courts having general judicial powers.’ ”
 

 Limbaugh v. Board of Managers, City of Birmingham Ret & Relief Sys.,
 
 628 So.2d 623, 624 (Ala.Civ.App.1993) (quoting
 
 Mahaffey v. Board of Managers,
 
 515 So.2d 1261, 1262 (Ala.Civ.App.1987)).
 
 See also
 
 
 *1159
 

 Ex parte Buffalo Rock Co.,
 
 941 So.2d 273, 278 (Ala.2006).
 

 “Judicial records import absolute verity and are not subject to contradiction in collateral proceedings by extraneous evidence.
 

 “The same general rule pertains to a judgment rendered by an administrative tribunal invested with judicial power.”
 

 Alabama Elec. Coop., Inc. v. Alabama Power Co.,
 
 251 Ala. 190, 197, 36 So.2d 523, 529-30 (1948) (citations omitted).
 

 “[W]hen the law has vested a special board, commission or tribunal with authority to hear and determine matters arising in the course of its duties, its decisions on those matters are conclusive, and like the judgments of courts, cannot be collaterally attacked in another proceeding.”
 
 City of Lubbock v. Corbin,
 
 942 S.W.2d 14, 22 (Tex.App.1996). The decision of an administrative agency acting in a quasi-judicial capacity is not subject to collateral attack if the agency had jurisdiction over the parties and the subject matter.
 
 In re Applications T-851 and T-852,
 
 268 Neb. 620, 686 N.W.2d 360 (2004);
 
 Bryant v. Arkansas Pub. Serv. Comm’n,
 
 54 Ark.App. 157, 924 S.W.2d 472 (1996).
 

 Clearly, the Board of Nursing had subject-matter jurisdiction and personal jurisdiction over Dr. Williams in the disciplinary proceeding that culminated in the decision to suspend Dr. Williams’s license for 90 days and to place him on probation for 24 months.
 
 See
 
 § 34-21-25(b), Ala. Code 1975 (authorizing the Board of Nursing to “deny, revoke, or suspend any license issued by it or to otherwise discipline a licensee upon proof that the licensee[ ] is guilty of ... [conduct] that would tend to bring reproach upon the nursing profession”).
 
 Cf. Ex parte Alabama Bd. of Exam’rs in Counseling,
 
 796 So.2d at 358 (holding that the Board of Examiners had jurisdiction over a counselor because the counselor sought and the Board issued a license to the counselor).
 

 The hearing officer’s order purporting to declare the Nursing Board’s order suspending Dr. Williams and placing him on probation a nullity failed to follow applicable law. “[T]he failure to follow the applicable law renders [a] hearing officer’s decision arbitrary and capricious.”
 
 Ex parte Wilson,
 
 984 So.2d 1161, 1170 (Ala.2007). We therefore vacate that portion of the hearing officer’s opinion declaring the Board’s order a nullity.
 

 Because the hearing officer improperly focused on a matter that he had no statutory authority to address, he, not surprisingly, failed to address the pivotal issues in the case — whether Dr. Williams was qualified to remain a member of the nursing faculty at BSCC in light of the probationary status of his nursing license and, if not, the appropriate disciplinary action that should be taken against him. BSCC has requested this court to find in its favor on those issues, but, as a court of review, we are not empowered by the FDA to make such initial determinations. We are therefore forced to remand the case for the hearing officer to consider those issues unless we affirm the hearing officer’s finding that BSCC terminated Williams for impermissible personal reasons.
 

 II.
 

 The hearing officer specifically found that BSCC’s termination of Dr. Williams’s employment “appears to have been for personal reasons of President Kennedy under guise of office.” The Alabama Supreme Court has explained that “the word ‘personal’ ... denotes a personal bias, prejudice, or antipathy ... toward the [employee].... Personal is in contrast with judicial; it characterizes an attitude
 
 *1160
 
 of extrajudicial origin.”
 
 Marshall County Bd. of Educ. v. State Tenure Comm’n,
 
 291 Ala. 281, 286, 280 So.2d 130, 134 (1973) (construing “political and personal reasons” language in the Teacher Tenure Act).
 

 The hearing officer based his “personal-reasons” finding on the following predicate facts and circumstances: (1) President Kennedy’s previous attempt to terminate Dr. Williams’s employment in May 2002 was unsuccessful and cost the college over $200,000 in backpay and benefits when Dr. Williams prevailed on appeal; (2) President Kennedy was “the driving force” behind the charges brought by the Board of Nursing against Dr. Williams; (3) President Kennedy attempted to discharge Dr. Williams in September 2006 without affording him the procedural-due-process protections guaranteed by the FDA and thereby required Dr. Williams to file a direct appeal to the ALJ for a hearing; and (4) President Kennedy was biased against Dr. Williams, as demonstrated by her failure to initiate termination proceedings against other employees when there were grounds to do so.
 

 Before we discuss each of the predicate facts and circumstances upon which the hearing officer relied for his finding that President Kennedy was motivated by personal reasons to discharge Dr. Williams, it must be said that a fair reading of the hearing officer’s 43-page order in this case leaves no doubt that the hearing officer did not view the predicate facts and circumstances listed above as discrete and unconnected events in the procedural history of this case, but, instead, considered them as parts of one continuous proceeding during which President Kennedy made repeated attempts to remove Dr. Williams from the BSCC nursing faculty. In our judgment, the hearing officer’s misapprehension that three separate and distinct administrative proceedings were, in actuality, all part of one continuous whole affected the validity of his findings of fact and conclusions of law.
 

 As to the first enumerated circumstance, the record reveals that President Kennedy first proposed to terminate Dr. Williams’s employment in May 2002, based on the charge of “continued insubordination and ineffective instruction ... including complaints of sexual harassment which are being investigated currently by the Board of Nursing.” An employee-review panel convened under the version of the FDA that was in effect before the 2004 amendments concluded that dismissal was not warranted and determined that Dr. Williams should be suspended without pay for 42 days. The college appealed and lost in the circuit court, the Court of Civil Appeals, and the Alabama Supreme Court, finally being required to pay Dr. Williams a substantial sum in backpay and benefits.
 

 The record contains no evidence, however, indicating that, in seeking to terminate Dr. Williams’s employment in 2002, President Kennedy was motivated by personal animosity towards Dr. Williams. In fact, the record reveals (and the hearing officer’s own findings of fact recount) that, beginning in 1991, a number of sexual-harassment complaints were lodged against Dr. Williams — “so many in fact, that his name was like a ‘lightning rod.’ ” Accordingly, it affirmatively appears from the record that President Kennedy was motivated by reasons that were professional, not personal — i.e., that she was seeking to discharge a faculty member whose alleged sexual misconduct presented a threat to students and reflected poorly on the college.
 

 As to the second circumstance, the record contains no evidence indicating that President Kennedy caused the Nursing Board to initiate an investigation of sexual-
 
 *1161
 
 misconduct complaints against Dr. Williams. The hearing officer’s findings of fact imply that the Nursing Board began its investigation when J.B., a former nursing student who had filed with the college a 1991 sexual-harassment complaint against Dr. Williams, was “encouraged by President Kennedy” to file a complaint with the Board.
 

 The record demonstrates that President Kennedy telephoned J.B. in
 
 1997
 
 — -four
 
 years before
 
 the Nursing Board began its investigation of the complaints against Dr. Williams — to say that the college “had not forgotten” her and was “still working on” the subject of her complaint. In addition, the record affirmatively establishes that the Board’s investigation was triggered by a complaint from K.S., the ex-husband of one of Dr. Williams’s former nursing students, not a complaint from J.B. The hearing officer’s findings of fact with respect to this issue imply the existence of a “master plan” by President Kennedy to remove Dr. Williams by any means:
 

 “That President Kennedy was the driving force in the [Nursing] Board’s charge is suggested by the timing of events, by the perplexing role of [K.S.,] the ex-husband [of a BSCC nursing student], by the fact of Dr. Williams’ reinstatement costing Bishop State over $200,000, by the fact that the [Nursing] Board somehow had access to the College’s really old files, by the fact that Dr. Williams was the sole remaining tenured instructor in the Department of Nursing ..., and importantly, that in 1997, President Kennedy initiated a call to [J.B.] assuring her, ‘We are still working on the ease. We haven’t forgotten it.’ Working on it she was, and apparently she thought the Board of Nursing was her ace-in-the-hole.”
 

 The hearing officer’s “master-plan” theory highlights the problem with the hearing officer’s misapprehension that three separate and distinct administrative proceedings were actually part of an integrated whole.
 

 Even if there
 
 had
 
 been evidence indicating that President Kennedy prodded the Nursing Board to initiate an investigation into the sexual-misconduct charges against Dr. Williams, such evidence would not, without more, have tended to show that President Kennedy was motivated by personal reasons to remove Dr. Williams from his position as a nursing instructor. On the contrary, such evidence would have tended to show that President Kennedy had legitimate concerns regarding the competence or morality of a faculty member who was the subject of numerous sexual-misconduct complaints.
 
 See
 
 § 36-26-102 (listing “incompetency” and “immorality” as proper grounds for termination of a nonprobationary employee).
 

 As to the third circumstance — that President Kennedy’s attempt to discharge Dr. Williams in September 2006 without affording him the procedural-due-process protections guaranteed by the FDA — the record indicates that President Kennedy did not offer Dr. Williams a teaching contract for the academic year beginning with the fall 2006 term because, when Dr. Williams did not arrive to teach in the summer of 2006, she (and other staff members) assumed that he had resigned his teaching position. That evidence indicates no personal bias or antipathy towards Dr. Williams.
 

 As to the fourth circumstance- — that President Kennedy failed to initiate termination proceedings against other employees when there were grounds to do so— there was no evidence indicating that the other employees also had encumbered professional licenses or were the subjects of sexual-harassment complaints.
 
 Cf. Ex parte Wilson,
 
 984 So.2d at 1172 (Lyons, J.,
 
 *1162
 
 concurring in part and concurring in the result) (stating that “one relying on [the ‘personal-or-political-reasons’] portion of the [Teacher Tenure] statute admits that she is guilty of some misfeasance but argues that she is being singled out while
 
 others guilty of the same misfeasance
 
 are not being charged, so that the adverse action against her is motivated by either personal or political reasons” (emphasis added)).
 

 Although the record demonstrates that President Kennedy had a
 
 -professional
 
 bias against Dr. Williams based on the statutory grounds of incompetency and immorality listed in § 36-26-102, the record contains no evidence indicating that President Kennedy had a
 
 personal
 
 “bias, prejudice, or antipathy” towards Dr. Williams.
 
 Marshall County Bd. of Educ.,
 
 291 Ala. at 286, 280 So.2d at 134. To the extent that the hearing officer found otherwise, he failed to follow the applicable law, and his order is, therefore, arbitrary and capricious.
 
 See Ex parte Wilson,
 
 984 So.2d at 1173.
 

 Conclusion
 

 The hearing officer failed to follow applicable law in three respects — by addressing a matter that was beyond his authority, by neglecting matters that were within his authority and were determinative of the case, and by erroneously characterizing the reasons for Dr. Williams’s dismissal as personal. We, therefore, conclude that the hearing officer’s order was arbitrary and capricious. We reverse the hearing officer’s decision and remand the cause to the original hearing officer. The hearing officer is specifically instructed to-address and resolve the issues originally presented to him — whether the probationary status of Dr. Williams’s nursing license disqualified Dr. Williams from acting as a nursing instructor and, if so, the appropriate disciplinary action that should be taken against Dr. Williams.
 

 REVERSED AND REMANDED.
 

 PITTMAN, BRYAN, and MOORE, JJ, concur.
 

 THOMPSON, P.J., concurs in the result, without writing.
 

 [1]
 

 . Dr. Williams concedes that the hearing officer had no statutory authority with respect to the award of an attorney’s fee, costs, and punitive damages.
 

 [2]
 

 . Curiously, the hearing officer cited, in support of its conclusion that the evidence was insufficient to support the Nursing Board’s order, the judgment of the Montgomery Circuit Court — a judgment that had been reversed by this court in
 
 Alabama Board of Nursing v. Williams,
 
 supra. The hearing officer acknowledged the reversal but erroneously stated that it was based on grounds
 
 other than
 
 evidentiary sufficiency.