THOMAS, Judge.

Facts and Procedural History

In September 2009, Emily Walker was employed as a contract principal for the Montgomery County Board of Education (“the Board”). She was assigned to Harrison Elementary School (“Harrison”). Based on the terms of her contract and the Teacher Accountability Act (“the TAA”), Ala.Code 1975, § 16-24B-1 et seq., Walker was employed as a contract principal[1] for a three-year term. See Ala.Code 1975, § 16-24B-3(b). Walker’s contract provided that she could be transferred to any other principal opening in the Montgomery County school system (“the school system”) upon the recommendation of the superintendent of the school system and approval of that recommendation by the Board. The contract also provided that it could be canceled in accordance with the TAA. Walker’s contract stated the grounds for cancellation, mirroring the grounds set out in § 16-24B-3(e)(l), which provides the following:
“An employing board may cancel the contract of a contract principal for cause at any time for any of the following reasons:
“a. Immorality.
“b. Insubordination.
“c. Neglect of duty.
“d. Conviction of a felony or a crime involving moral turpitude.
“e. Failure to fulfill the duties and responsibilities imposed upon principals by this code.
*1010 “f. Willful failure to comply with board policy.
“g. A justifiable decrease in the number of positions due to decreased enrollment or decreased funding.
“h. Failure to maintain his or her certificate in a current status.
“i. Other good and just cause.
“j. Incompetency.
“k. Failure to perform duties in a satisfactory manner.”
In December 2010, the Board received the results of a commissioned study regarding the use of its facilities (“the report”). The report suggested that the Board consider closing certain schools based on the conditions of the facilities, the reduction in enrollment in several schools, shifting demographics, the need to consolidate and maximize the efficient use of resources within the school system, and the reduction in operating funds available to the Board. Specifically, the report recommended closing Harrison or investing nearly $5 million in a major renovation of the school building. According to Donald Dotson, the school system’s assistant superintendent for operations, the recommendation that Harrison be closed was based, in part, on the dramatic decrease in enrollment at the school over the preceding 10 years.
Based on the report and in consideration of the threat of impending budget cuts, the superintendent of the school system, Barbara Thompson, recommended on January 11, 2011, that the Board close eight Montgomery County schools, including Harrison. After public meetings on the subject and revisions to Superintendent Thompson’s recommendation, the Board ultimately voted in late February 2011 to close six schools, including Harrison.
After the Board approved the decision to close six schools, Superintendent Thompson and Veverly Arrington, the director of human resources for the school system, began to devise a plan to handle the transfer of tenured employees from the schools to be closed and a plan to address the loss of principal positions created by the school closures. According to Arrington, she and Superintendent Thompson, as well as others, discussed several scenarios for handling the loss of the principal positions. Arrington explained that 17 contract principals in the school system were up for renewal at the close of the 2010-2011 school year.[2] Ar-rington testified that Superintendent Thompson had considered nonrenewing all contract principals up for renewal and allowing all of those nonrenewed principals to seek a new principal contract for the following year. However, Arrington testified, that plan was rejected because of objections from the local principals’ association and the Montgomery County Educational Association and requests from the Board that attempts be made not to affect more individuals than necessary. In addition, Arrington noted that practical considerations of stability and continuity in school leadership led to the conclusion that nonrenewing all 17 contract principals up for renewal would not best serve the interests of the school system.
Instead, Arrington explained, Superintendent Thompson decided that the school closures would impact only the contract principals at the six schools slated for closure; of those six contract principals, four were up for renewal and two, including Walker, were in the middle of their three- *1011 year contract term. Thus, Superintendent Thompson recommended to the Board that it nonrenew the contracts of the four principals whose contracts were up for renewal and that the Board cancel the contracts of Walker and the other principal whose contract was not up for renewal. Arrington testified before the circuit court that all six of the affected contract principals were informed of Superintendent Thompson’s recommendation and that all six were encouraged to apply for any open principal positions for the following school year. The Board accepted Superintendent Thompson’s recommendations.
In the letter canceling Walker’s contract, Superintendent Thompson gave as the reason for the cancellation of Walker’s contract the “justifiable decrease in the number of positions due to decreased enrollment or decreased funding.” § 16-24B-S(e)(l)g. As was her right, see § 16-24B-8(e)(2)b., Walker requested an expedited evidentiary hearing before the Montgomery Circuit Court. The Board notified the circuit court of Walker’s request, and an expedited evidentiary hearing was held on May 16-17, 2011. According to § 16-24B-3(e)(2)b., the Board bore “the burden to prove, by a preponderance of the evidence, that [Walker’s] cancellation [was] solely for cause pursuant to subdivision (1) of th[at] section.” After the conclusion of the expedited evidentiary hearing, the circuit court entered a judgment on June 29, 2011, upholding the cancellation of Walker’s principal contract. She timely appeals that judgment.[3]

Standard of Review

Our standard of review is set out in the TAA. Section 16-24B-5(b), Ala.Code 1975, states that this court must affirm the decision of the circuit court unless we “find[ ] the decision to be against the great weight of the evidence.” As will be explained below, we are called on to construe the meaning of the phrase “[a] justifiable decrease in the number of positions due to decreased enrollment or decreased funding.” § 16-24B-3(e)(l)g. Accordingly, as to that question, we will apply the well settled principles of statutory construction:
“In interpreting the provisions of an Act ..., a court is required to ascertain the intent of the legislature as expressed and to effectuate that intent. Lewis v. Hitt, 370 So.2d 1369 (Ala.1979). The legislative intent may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained by its passage. Ex parte Holladay, 466 So.2d 956 (Ala. 1985). Words used in the statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. Coastal States Gas Transmission Co. v. Alabama Public Service Commission, 524 So.2d 357 (Ala.1988); Alabama Farm Bureau Mutual Casualty Insurance Co. v. City of Hartselle, 460 So.2d 1219 (Ala. 1984). If the language of the statute is clear and unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect. Dumas Brothers Manufacturing Co. v. Southern Guaranty Insurance Co., 431 So.2d 534 (Ala.1983); Town of Loxley v. Rosinton Water, Sewer, & Fire Protection Authority, Inc., 376 So.2d 705 (Ala. 1979).”
Tuscaloosa Cnty. Comm’n v. Deputy Sheriffs’ Ass’n of Tuscaloosa Cnty., 589 So.2d *1012 687, 689 (Ala.1991). “[A] court may explain the language [in a statute], but it may not detract from or add to the statute.” Water Works & Sewer Bd. of Selma v. Randolph, 833 So.2d 604, 607 (Ala.2002). “Furthermore, [the appellate courts are] not at liberty to rewrite statutes.... ” Ex parte Carlton, 867 So.2d 332, 338 (Ala. 2003).

Whether Walker’s Contract Was Canceled for Cause

Walker argued to the circuit court and argues to this court on appeal that the Board failed to prove the ground upon which it based the cancellation of her contract. She presented evidence indicating that the Board had knowledge that at least two principal positions would be open at the end of the school year based on the fact that the Board had accepted the resignation of one contract principal and had approved the retirement of another. Because of those two openings, she contends, the Board could not establish “[a] justifiable decrease in the number of positions” such that it could cancel her contract under the contract terms and the provisions of the TAA. In other words, Walker is arguing that, under § 16-24B-3(e)(l)g., the Board was required to prove a decrease in the number of “open,” “vacant,” or “available” principal positions in order to establish grounds to cancel her contract. We disagree.
The language of the TAA indicates that cancellation of a contract principal’s contract is appropriate when there is “[a] justifiable decrease in the number of positions due to decreased enrollment or decreased funding.” § 16-24B-3(e)(l)g. Our reading of the clear language used in that provision convinces us that the TAA permits cancellation of a contract principal’s contract if the Board can prove that decreased enrollment or decreased funding has caused a decrease in the number of principal positions in the school system. In order for this court to construe the statute the way Walker urges, we would have to add one or more of the words “open,” “vacant,” or “available” before the word “positions,” thereby overstepping the boundaries of our review and rewriting the statute. This we are prohibited from doing. See Randolph, 833 So.2d at 607; see also Saulsberry v. Wilcox Cnty. Bd. of Educ., 641 So.2d 283, 286 (Ala.Civ.App.1993)(stating that a court may, in rare instances, supply inadvertently omitted words from a statute in order “to complete the sense, and to express the legislative intent” but that “it cannot supply words purposely omitted” (quoting Ex parte Clayton, 552 So.2d 152, 154 (Ala. 1989) (internal quotation marks omitted))).
Based on the evidence presented to the circuit court, the fact that the school system suffered a decrease in the number of principal positions cannot be disputed; the Board closed six schools and therefore lost the need for six principal positions. The fact that certain principal positions were open by the end of the school year does not change the fact that the number of principal positions in the school system had been reduced. Thus, we cannot agree that the Board did not meet its burden of establishing “[a] justifiable decrease in the number of positions due to decreased enrollment or decreased funding.” § 16-24B-3(e)(l)g.

Whether the Board Was Required to Have Transferred Walker

Walker also argues that the fact that, based on the terms of her contract, the Board could transfer her to any school in the school system compels the conclusion that the Board was required to transfer her into an open principal position instead of canceling her contract. The Board does *1013 not dispute the fact that it could have transferred Walker to any principal position within the school system under Walker’s contract. The Board does, however, dispute the fact that its right to transfer Walker into any open principal position required it to do so instead of canceling her contract. As the Board points out, the TAA does not require the Board to transfer a contract principal as a prerequisite to canceling his or her contract or to give preference to any contract principal over another. Instead, as is plain from its language, the TAA permits the Board to cancel the contract of any contract principal when there exists “[a] justifiable decrease in the number of positions due to decreased enrollment or decreased funding.” § 16-24B-3(e)(l)g. We cannot agree that the fact that open positions to which Walker might have been transferred existed impacts the right of the Board to cancel her contract under the TAA.
We are also not convinced by Walker’s argument that she was entitled to be transferred to one of the open principal positions on the authority of Pickens County Board of Education v. Keasler, 263 Ala. 231, 82 So.2d 197 (1955). The Keasler court affirmed the issuance of a writ of mandamus ordering the Pickens County Board of Education to return the teacher-appellee, who was tenured, to full-time teaching status. Keasler, 263 Ala. at 234, 82 So.2d at 199. The board had canceled the contract of the tenured teacher-appellee based on a “ ‘justifiable decrease in the number of teaching positions’ ” despite the fact that the board continued to employ four nontenured teachers qualified to teach the same grades as the teacher-appellee. Keasler, 263 Ala. at 232, 82 So.2d at 198 (quoting Ala.Code 1940, Tit. 52, § 356)(emphasis omitted). The Keas-ler court concluded that the board was not permitted to cancel the contract of the tenured teacher, who was qualified for the positions held by nontenured teachers, in favor of retaining the nontenured teachers. Keasler, 263 Ala. at 234, 82 So.2d at 199. The court stated:
“ ‘... Even though by statute a justifiable decrease in the number of teaching positions is recognized as ground for the cancelation of a permanent tenure contract, the retention of a probationary teacher and the dismissal of a permanent employee qualified to teach in the position of the non-tenure teacher is not authorized by such a statutory provision.’ ”
Keasler, 263 Aa. at 234, 82 So.2d at 199 (quoting 47 Am.Jur. Schools § 139, pp. 397-98).
Keasler involved a teacher covered by a former version of the Teacher Tenure Act (“the TTA”), which alone makes its holding inapposite to the current issue in this case. The TAA makes it abundantly clear that contract principals are not entitled to tenure. First, a contract principal is employed under contract by an employing board for a limited period of not less than three years. § 16-24B-3(a). Second, a contract principal whose employment term is coming to an end may be nonrenewed by the employing board for any reason other than a personal or political reason. § 16-24B-3(e). Finally, § 16-24B-3(d) states, in pertinent part, “[njothing in this section or chapter shall be construed to confer continuing service status ... on any contract ... principal.” Walker was therefore not entitled to be transferred into one of the open principal positions under the rationale expressed in Keasler.

Whether the Cancellation of Walker’s Contract Violated Ala.Code 1975, § 16-21/.B-8

Walker next argues that the Board’s failure to transfer her into one of the open principal positions is evidence indicating *1014 that the Board retaliated against her for contesting her contract cancellation. As explained above, the TAA requires that the contract of a contract principal like Walker be canceled only for cause, as set out in § 16-24B-3(e)(l)a.-k. Section 16-24B-8, upon which Walker expressly relies, declares that “[i]t shall be unlawful for an employing board to cancel or reduce the contract of a teacher, principal, or contract principal or to transfer, reprimand, or discipline a teacher because the teacher opposed any employment action under this chapter or this title.”
Walker contends that she proved that preferential treatment was given to those contract principals whose contracts were nonrenewed and who did not contest that action, thus proving that the Board’s failure to transfer her to an open contract principal position was a prohibited act of retaliation under § 16-24B-8. We cannot agree. Arrington testified at trial that all six of the contract principals who were nonrenewed or whose contracts were canceled were encouraged to seek any open contract principal positions for the following year; although Walker testified briefly at trial, she did not deny being told that she could apply for one of the open positions. She appears to base her argument on the questioning of Arrington regarding whether, in order to be transferred from one contract principal position to another, a contract principal must seek the position or interview for it. Although Arrington explained that a transfer from one contract principal position to another did not require an interview process, she also explained that transfers of that nature were routinely done for various reasons on the recommendation of Superintendent Thompson and the approval of the Board. Nothing in the testimony before the circuit court indicated that a specific decision not to transfer Walker into an open principal position was made or that she was discouraged from seeking another principal position after the cancellation of her contract under § 16-24B-3(e)(l)g. We are at a loss to determine exactly what “preferential treatment” was conferred on the other contract principals who were nonrenewed or whose contracts were canceled such that it denotes retaliation toward Walker for her contest of the Board’s cancellation of her contract.

Whether the Cancellation of Walker’s Contract Was Motivated by Personal Bias

Walker further argues that she was subjected to “differential treatment,” which, she says, amounts to proof that the Board canceled her contract for reasons of personal bias. As factual support for her claim of “differential treatment,” Walker relies on two facts: (1) that a probationary principal[4] was transferred in January 2011 to a principal position for which Walker was qualified and (2) that not all contract principals were either nonrenewed or had their contract canceled as a result of the decrease in principal positions in the school system. She complains that the Board’s decision to transfer the probationary principal was a “deal” that the Board did not offer to her, implying, we presume, that the Board showed favoritism to that probationary principal. She further contends that the Board’s failure to terminate in some way the contracts of every contract principal in the school system demonstrates that Walker was “held to a different standard” or treated differently than other contract principals.
*1015 Walker bases her argument on two special writings in Ex parte Wilson, 984 So.2d 1161 (Ala.2007). In those special writings, Justice Lyons and Justice Stuart both briefly addressed whether “evidence of lesser discipline of other employees for like offenses” can be considered in a hearing at which a teacher challenges the cancellation of his or her contract for disciplinary reasons. Ex parte Wilson, 984 So.2d at 1172 (Stuart, J., concurring specially); id. at 1178 (Lyons, J., concurring in part and concurring in the result). Relying on those special writings, Walker states in her brief that “[differential treatment of similarly situated employees constitutes personal bias.” However, neither of those special writings stands for that proposition. Although both Justice Lyons’s and Justice Stuart’s special writings indicate that evidence of disparate discipline of employees who have committed the same offense would be relevant in a case in which a disciplined teacher pleaded and argued the defense of personal or political bias, neither special writing indicates that such proof would conclusively establish personal or political bias. In fact, Justice Stuart stated in her writing that “evidence that other employees have been disciplined less severely for like offenses is not a defense per se and does not necessarily establish that the motive for the cancellation of the teacher’s employment contract was personal or political.” Ex parte Wilson, 984 So.2d at 1172 (Stuart, J., concurring specially) (emphasis added). Walker’s overstatement of the legal principle discussed in two special writings in Ex parte Wilson does not help her here.
Instead, we will consider a case involving the TTA, in which our supreme court considered an argument similar to Walker’s made by a teacher whose contract was canceled because of a decrease in teaching positions. See Williams v. Board of Educ. of Lamar Cnty., 268 Ala. 372, 375, 82 So.2d 549, 552 (1955). The version of the TTA in effect at the time that the contract of the teacher in Williams was canceled listed “ ‘justifiable decrease in the number of teaching positions’ ” as a ground for cancellation of a teacher’s contract. Williams, 263 Ala. at 375, 82 So.2d at 552 (quoting Ala. Acts 1953, Act No. 773, § 358) (emphasis omitted). Although the school board had proved a justifiable decrease in the number of teaching positions, the teacher had continued to argue that her contract had been canceled for personal reasons. Williams, 263 Ala. at 375, 82 So.2d at 552. Rejecting her right to further question the cancellation of her contract, our supreme court explained:
“As we see it, the only pertinent inquiry was whether there was a ‘justifiable decrease in the number of teaching positions.’ That being established, the reason for selecting appellant’s contract as the one to be cancelled was not open to inquiry. We find nothing in the Tenure Act establishing a criterion for determining what particular tenure teacher’s contract should be cancelled when there is a ‘justifiable decrease in the number of teaching positions.’ In such situation, it seems to us that the right of selection is a matter resting entirely with the employing Board of Education.”
Williams, 263 Ala. at 375, 82 So.2d at 552 (emphasis added). Although Walker’s contract falls under the TAA and not the TTA, we have found no provision in the TAA that “establish[es] a criterion for determining what particular [contract principal’s] contract should be cancelled when there is a ‘justifiable decrease in the number of [principal] positions.’ ” Williams, 263 Ala. at 375, 82 So.2d at 552. The Board was entitled to make the decision regarding which contract principals would be nonrenewed or would have their con *1016 tracts canceled. Courts are not permitted to usurp the role of the school board and cannot determine that another course of action other than the one taken by the school board might have been wiser or more equitable. State ex rel. Steele v. Board of Educ. of Fairfield, 252 Ala. 254, 261, 40 So.2d 689, 695 (1949), overruled on other grounds, Ex parte Jackson, 625 So.2d 425 (Ala.1992). The fact that other contract principals did not suffer the same fate as Walker is not sufficient proof that the decision made by the Board was personally or politically motivated. Nor is the fact that Superintendent Thompson or the Board had other options available that would have preserved Walker’s contract, including the cancellation of the contracts of probationary principals, evidence that compels the conclusion that Walker was singled out for an improper reason. Thus, we reject Walker’s argument that the cancellation of her contract was personally motivated because other probationary or contract principals retained their positions.

Conclusion

The circuit court determined that the Board proved that it canceled Walker’s contract because of “[a] justifiable decrease in the number of positions due to decreased enrollment or decreased funding.” § 16-24B-8(e)(l)g. The evidence before the circuit court established that the unfortunate financial situation of the Board required the Board to make difficult choices to reduce its operating costs, that it closed six schools as a result, that it therefore decreased the number of contract principal positions, and that it exercised its right to cancel Walker’s contract consistent with the terms of her contract and the requirements of the TAA. None of Walker’s arguments against the Board’s action are persuasive. The judgment of the circuit court upholding the cancellation of Walker’s contract is not against the great weight of the evidence, and we therefore affirm that judgment. See § 16-24B-5(b).
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.

. A “contract principal” is defined as “only those persons hired on or after July 1, 2000, and certified for the position of principal as prescribed by the State Board of Education and who are employed by an employing board as the chief administrator of a school, including a vocational center.” Ala.Code 1975, § 16-24B-2(2). A "principal,” however, refers to "only those persons hired before July 1, 2000, and certified for the position of principal as prescribed by the State Board of Education and who are employed by an employing board as the chief administrator of a school, including a vocational center.” § 16-24B-2(7).

. Under the TAA, contract principals are employed by contract for a period of not less than three years, after which the Board can either renew or nonrenew a contract principal’s contract. See § 16-24B-3(c).

. Under Ala.Code 1975, § 16-24B-5(a), either party may appeal the judgment of the circuit court to this court by filing a notice of appeal within 14 days of the entry of the circuit court’s judgment.

. A "probationary principal” is defined in the TAA as "[a]ny principal hired for the first time in any local school system as a principal on or after July 1, 2000.” § 16-24B-2(8).