On Application for Rehearing

THOMAS, Judge.
The opinion of January 4, 2013, is withdrawn, and the following opinion is substituted therefor.
Clark Sharp was employed by the Huntsville City Board of Education (“the Board”) as a mechanic; Sharp was a non-probationary support employee. In 2010, the Board was facing a nearly $20 million shortfall in its fiscal year 2009 budget and had also failed to comply with the Fiscal Accountability Act, codified at Ala.Code 1975, § 16-13A-1 et seq., specifically § 16-13A-9, which requires the Board to maintain at least one month’s operating budget in reserve. The State Board of Education (“the State”), through its Deputy Superintendent for Finance and Administration, Dr. Craig Pouncey, notified the Board of its concern over the Board’s fiscal issues. Among the issues that raised significant concern for Dr. Pouncey was that *919 over 85% of the Board’s local funds were used to pay what Dr. Pouncey considered to be an exorbitant number of support staff. In fact, the Board spent $1,400 a year per pupil on its support staff. Based on his review of the Board’s finances, Dr. Pouncey urged the Board to implement a drastic reduction in personnel or, he warned, face having the State intervene and take over the operation of the school system.
The Board decided to cooperate with the State; it hired the former State Superintendent of Schools, Dr. Ed Richardson, as a consultant to assist it with making a plan to reduce the Board’s operating budget. Dr. Richardson recommended a two-stage reduction of the Board’s personnel. Ultimately, the Board, utilizing its Reduction-in-Force (“RIF”) Policy, reduced personnel by terminating nearly all of its probationary support personnel in March 2011 (“the March RIF plan”) and by terminating the remaining probationary support personnel, reassigning 9 or 10 assistant principals, releasing 154 nontenured teachers, and terminating 77 nonprobationary support personnel in April 2011 (“the April RIF plan”) (the March RIF plan and the April RIF plan are sometimes referred to collectively as “the RIF plan”). Sharp was notified in April that he was recommended for termination of employment in conjunction with the April RIF plan.
The notification Sharp received from the Board’s superintendent, Dr. Ann Roy Moore, read as follows:
“You are hereby given notice of my intention to recommend termination of [your] employment [as] a Mechanic for Huntsville City Board of Education as provided in § 36-26-102, Ala.Code 1975. The reason for the proposed termination is as follows: justifiable decrease in jobs in the system or other good and just causes.
“The facts showing that the termination is taken for one or more of the reasons listed in § 36-26-102, Ala.Code 1975, are as follows:
“1) Due to financial circumstances, the Board must reduce the number of its employees. To accomplish this, the Board has adopted a Reduction in Force plan. The selection of the employees to be terminated is based upon the job classifications affected by the Reduction in Force plan and years of service within the Huntsville School System (those with fewer years of service in each specifically identified area are to be terminated before those with greater seniority).”
The notice further specified that the Board would hold a meeting on the proposed termination on May 17, 2011, and that Sharp was entitled to request a conference with the Board, provided he gave the Board the requisite notice of his desire for a conference.
Sharp appeared at the hearing, as did his counsel, who spoke with the Board regarding the proposed termination. The Board voted to terminate Sharp’s employment, and Sharp was given written notice of the termination. Sharp then gave the Board notice that he contested the termination and that he requested a hearing pursuant to the former Fair Dismissal Act (“the FDA”), former § 36-26-100 et seq., Ala.Code 1975, which has since been repealed and replaced by the Students First Act (“the SFA”), § 16-24C-1 et seq., Ala. Code 1975, effective July 1, 2011.[1] A hear *920 ing was held before a hearing officer on November 2, 2011. After the hearing, the hearing officer entered an award overturning the Board’s decision to terminate Sharp’s employment.
In his award, the hearing officer noted that the Board had faced financial issues and that it had faced being taken over by the State if it had not acted to address its financial shortcomings. The hearing officer then found that Dr. Richardson had recommended to the Board which employees to terminate; he further found and took issue with the fact that, according to the hearing officer, Dr. Richardson had not conferred with John Brown, the Board’s Director of Maintenance, Facilities, Construction, Transportation, and Safety, regarding Brown’s opposition to the termination of all the mechanics in the Board’s employ. The hearing officer also stated that “[t]here was no evidence that by firing the mechanics and outsourcing their various duties, any money would be saved.” The hearing officer concluded:
“It was the duty of the Board to prove that [its] RIF of these mechanics did accomplish the statute requirement [(sic)] that the decrease in jobs was justifiable or that there was good and just cause[. Ala.Code 1975, § ] 36-26-102.
“In view of the absence and failure of the Board to establish a legitimate need to lay off this employee, I shall determine that no action should have been [ (sic) ] against this employee.”
Finally, the hearing officer noted that, after the institution of the RIF plan, the Board had added certain “staff employees” with salaries ranging from $49,271 to $141,600 per year, that the Board intended to contract with Teach for America to supply teachers for $550,000, and that the Board had purchased for $853,000 certain computer equipment for students in lieu of textbooks. The hearing officer stated that he had recited these expenditures in the award to “underscore the point that enough adjustment in the work force had been made and[, thus, that the financial issues faced by the Board had been resolved] and did not necessitate the termination of this employee who conceivably] saves money for necessary services.”
The Board sought to appeal the hearing officer’s award to this court. After the Board filed a letter brief setting out “special and important reasons,” pursuant to former Ala.Code 1975, § 36-26-104(b), we accepted the appeal. Sharp perfected a cross-appeal from the hearing officer’s award.
On appeal, the Board argues that the hearing officer impermissibly substituted his judgment for the Board’s judgment and erred by requiring the Board to prove a legitimate need to lay off Sharp instead of requiring the Board to prove only a justifiable decrease in jobs within the system. The Board further argues that it proved a justifiable decrease in jobs within the system. On cross-appeal, Sharp argues that the hearing officer should have also determined that the notice of proposed termination of his employment did not comply with former Ala.Code 1975, § 36-26-103(a), because it did not give him enough factual information to form a defense to the proposed termination. The Board argues that we should dismiss the cross-appeal filed by Sharp because the hearing officer’s award was wholly in Sharp’s favor and he therefore has no adverse decision from which to appeal. See, e.g., Personnel Bd. of Jefferson Cnty. v. Bailey, 475 So.2d 863 (Ala.Civ.App.1985). In the alternative, the Board further argues that the termination notice provided *921 to Sharp complied with former § 36-26-103(a).
We will first consider the issues raised by the Board’s appeal. We have recently had the opportunity to clarify the role of a hearing officer when faced with an appeal from a termination of employment under a RIF plan. See Huntsville City Bd. of Educ. v. Stranahan, 130 So.3d 204, 206 (Ala.Civ.App.2013); Huntsville City Bd. of Educ. v. Frasier, 122 So.3d 193, 201 (Ala.Civ.App.2013); and Board of Sch. Comm’rs of Mobile Cnty. v. Christopher, 97 So.3d 163, 174 (Ala.Civ.App.2012). Once a hearing officer has concluded that a school board has demonstrated that it had established as a ground for termination a justifiable decrease in jobs within the system, in the absence of allegations that the termination was motivated by an improper motive, the hearing officer is not permitted to further inquire into “whether the termination of a particular employee’s employment was justifiable under a RIF policy.”[2] Christopher, 97 So.3d at 174. As we have further explained, “the responsibility for making the difficult decisions regarding which positions to eliminate pursuant to a justified implementation of a RIF policy rests with the Board and ... hearing officers and the courts ‘are not permitted to usurp the role of the school board.’ ” Id. at 176 (quoting Walker v. Montgomery Cnty. Bd. of Educ., 85 So.3d 1008, 1016 (Ala. Civ. App.2011)).
In his award, the hearing officer specifically determined that the Board had not proven that it had “a legitimate need” to terminate Sharp’s employment specifically. In support of his conclusion, the hearing officer noted that Sharp and the other mechanics employed by the Board had performed valuable services that, according to the hearing officer, had saved money for the Board. In addition, the hearing officer concluded that the outsourcing of the duties performed by the mechanics would not result in any savings to the Board.
Those conclusions, however, are outside the scope of the question to be considered by the hearing officer when considering an appeal from a termination resulting from the implementation of a RIF plan. That Sharp or the other mechanics performed valuable services for the Board while employed is irrelevant to whether the termination of Sharp’s employment was permissible. Moreover, whether the outsourcing of the duties performed by the mechanics ultimately resulted in a savings to the Board is also outside the scope of the hearing officer’s review. The only “ ‘pertinent inquiry’ ” to be made by the hearing officer was whether the Board had proven a justification for decreasing the number of jobs in the system at the time the Board determined that a RIF plan should be instituted. Christopher, 97 So.3d at 174 (quoting Williams v. Board of Educ. of Lamar Cnty., 263 Ala. 372, 375, 82 So.2d 549, 552 (1955)).
As we explained in Frasier:
“The rule from Williams [v. Board of Education of Lamar County ], [263 Ala. 372, 82 So.2d 549 (1955)], as recently reiterated in Board of School Commissioners of Mobile County v. Christopher, [97 So.3d 163 (Ala.Civ.App.2012) ], holds that, once it is determined that there is a ‘ “ ‘justifiable decrease in the number *922 of positions due to decreased enrollment or decreased funding”” and that the employee at issue was discharged pursuant to that ground, a hearing officer may not inquire into the reasoning behind the selection of that particular employee for discharge. 97 So.3d at 175 (quoting Walker v. Montgomery Cnty. Bd. of Educ., 85 So.3d 1008, 1016 (Ala.Civ.App. 2011)). By examining the benefits of the services provided by the appellees, and the costs of replacing those services, the hearing officer necessarily undertook to determine whether the [Board] had correctly targeted the appellees’ specific employment for termination.
“The appellees clearly proved that they were valuable employees. However, it is doubtful that the [Board] could have selected any support employees for inclusion in the supplemental RIF plan who did not provide some necessary service. See Christopher, 97 So.3d at 176 (‘[M]any, if not all, of the employees in various school systems throughout the state are excellent employees who have had positive impacts on school systems through their employment.’). Dr. Richardson did not testify that the [Board] would experience no adverse consequences due to the terminations of the employment of the appellees. Dr. Richardson merely testified that he had recommended elimination of those positions he believed would least impact the classroom instruction of the students.... The hearing officer could not ‘ “usurp the role of the school board,” ’ id. (quoting Walker v. Montgomery Bd. of Educ., 85 So.3d at 1016), by second-guessing the financial wisdom of its choices.”
122 So.3d at 198 (footnote omitted).
However, unlike the hearing officer in Frasier, the hearing officer in the present case did not clearly indicate whether he had determined that the Board had established that its financial condition was such that it was required to institute the RIF plan and, thus, that there was a justifiable decrease in jobs within the system. See Frasier, 122 So.3d at 206 (explaining that when a school board relies on a justifiable decrease in jobs in the system as a ground for an employee’s discharge, the board must prove a justifiable decrease in jobs in the system and, if poor financial circumstances are the root cause of the decrease in jobs in the system, must also- prove the existence of the poor financial circumstances). Some of the statements in the hearing officer’s award indicate that he might have questioned the extent of the RIF plan and whether all the terminations the Board imposed under the April RIF plan were necessary to secure the fiscal soundness of the system, .but the hearing' officer failed to make any determination regarding the threshold issue whether the Board had proven a justifiable decrease in jobs in the system due. to its financial condition. Without a determination that the Board had failed to demonstrate a justifiable decrease of jobs in the system, the hearing officer’s decision reinstating Sharp is arbitrary and capricious and without legal support. See former Ala.Code 1975, § 36-24-104(b) (stating that a hearing officer’s decision “shall be affirmed on appeal unless [this court determines that it is] arbitrary and capricious”). Thus, we reverse the hearing officer’s award and remand the cause to the hearing officer for him to enter an award determining whether, based on the evidence presented at the November 2011 hearing, the Board proved that its financial circumstances resulted in a justifiable decrease in jobs within the system such that the April RIF plan, which applied to certain nonprobationary support employees, including Sharp, was necessary. See Bishop State Cmty. Coll, v. Williams, 4 So.3d 1152, 1162 (Ala.Civ. App.2008) (instructing a hearing officer to *923 address and resolve the issues originally presented to him without ordering a new hearing on those issues).
We turn now to the issue raised by Sharp in 'his cross-appeal. Sharp argues that the notice of proposed termination he received from the Board was deficient because it did not contain sufficient information to permit him to mount a defense to his proposed termination. Under former § 36-26-103(a), a notice of proposed termination was required to “contain a short and plain statement of the facts showing that the termination is taken for one or more of the reasons listed in [former] Section 36-26-102.” Specifically, Sharp complains that the notice failed to contain facts supporting the need to implement the RIF plan, regarding the alleged impending takeover of the school system by the State, or indicating why mechanics like Sharp were selected for termination of employment under the RIF plan. Sharp reiies on Bishop State Community College v. Archible, 33 So.3d 588, 590 (Ala.Civ.App.2009), in which this court determined that' a termination notice given to an employee of a college had failed to apprise the employee of the facts underlying the charges giving rise to the proposed termination, as required by former § 36-26-103(a), and, thus, that the employee had been deprived of the opportunity to marshal facts to prepare an adequate defense to those charges.
The Board argues that Sharp’s cross-appeal is due to be dismissed. Typically, a party may not take an appeal from a decision that is wholly favorable to him. Bailey, 475 So.2d at 865-66. The hearing officer’s award overturned the Board’s termination of Sharp’s employment and restored Sharp to his employment; thus, that award was wholly favorable to Sharp. However, Sharp’s appeal is in the nature of a conditional cross-appeal, which becomes ripe for review in the event that the judgment under review is reversed as a result of the appeal. See First Props., L.L.C. v. Bennett, 959 So.2d 653, 657 (Ala. Civ.App.2006); Bess v. Waffle House, Inc., 824 So.2d 783, 787 (Ala.Civ.App.2001). We will therefore consider whether the hearing officer should have determined that the notice provided to Sharp was insufficient under former § 36-26-103(a).
As. we have recently determined, the notice of proposed termination of employment in a case involving the institution of a RIF plan is not required by former § 36-26-103(a) to include all the facts giving rise to the need for that RIF plan or supporting the decision to include a particular class of employees or a particular employee in that RIF plan. Stranahan, 130 So.3d at 208.
As we explained in Stranahan:
“In the present case, the Board cited a ‘justifiable decrease in jobs in the system’ as the reason for the proposed terminations. See former § 36-26-102, Ala.Code 1975. In the notices, the Board then explained that reason by citing financial circumstances that necessitated the imposition of the RIF policy, and it explained the manner in which the employees whose employment was to be terminated under the RIF policy would be selected. Thus, the notices of termination provided by the Board explained that the Board’s current financial circumstances warranted the decrease of jobs in the system. See Ex parte Soleyn, 33 So.3d [584,] 588 [ (Ala.2009) ].
“Stranahan and Holmes each argue that under [Bishop State Community College u] Archible, [33 So.3d 588 (Ala. Civ.App.2009) ], a more detailed explanation of the basis of the Board’s financial situation was required. We disagree. As the Board points out, in Archible, supra, the terminations at issue were proposed because of financial improprie *924 ties, and this court determined that more information was required. It seems axiomatic that a more detailed statement of allegations of misconduct would be necessary to allow an accused employee to defend against those allegations. In this case, however, there are no adverse allegations for Stranahan or Holmes to defend against. The basis for the proposed terminations was that the Board was experiencing financial difficulties necessitating the implementation of the RIF policy. The primary argument asserted by Stranahan and Holmes before the hearing officers was that the notice they received from the superintendent did not afford them sufficient information to defend against the specific selection of them as employees whose employment was to be terminated. We cannot conclude that the former FDA required, as part of the Board’s notice to each employee terminated under a RIF policy, that the Board set forth the specific facts underlying its financial condition and the expected benefit of the implementation of the RIF policy, particularly with regard to each employee terminated.
“We conclude that the hearing officers erred in determining that the superintendent’s notices to Stranahan and Holmes were insufficient under former § 36-26-103, Ala.Code 1975.”
130 So.3d at 208.
Similarly, in the present case, the Board provided notice to Sharp that he would be included in the proposed terminations necessitated by the RIF plan that the Board was planning to institute as a result of its precarious financial position. The Board was not required to give Sharp notice of every aspect of the Board’s financial issues that the Board had determined necessitated the RIF plan, the anticipated cost savings expected as a result of the RIF plan, or the basis the Board used to determine that Sharp’s position would be included in the RIF plan. See Stranahan, 130 So.3d at 212 (Moore, J., concurring specially) (stating that “[t]he notice necessarily imparted that the Board intended to reduce its workforce exclusively to save the costs associated with the salaries and other monetary benefits payable to [the employees] and not for any other reason,” that “[t]he letters did not convey to [the employees] the exact financial condition of the Board; nor did the letters specify the nature of the causes leading to that financial condition or the extent of the financial relief the Board anticipated from the reduction in force,” and that “former § 36-26-103(a) did not require such detail in order to provide a nonprobationary employee an opportunity to mount an adequate defense to the proposed termination of his or her employment for financial reasons”). Thus, based on Stranahan, we conclude that the notice provided to Sharp complied with former § 36-26-103(a).
APPLICATION GRANTED; OPINION OF JANUARY, 4, 2013 WITHDRAWN; OPINION SUBSTITUTED; APPEAL — REVERSED AND REMANDED WITH INSTRUCTIONS; CROSS-APPEAL — AFFIRMED.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. Because the SFA does not apply retroactively, we apply the FDA in the present case. See Board of Sch. Comm’rs of Mobile Cnty. v. *920 Christopher, 97 So.3d 163, 171 (Ala.Civ.App.2012).

. As we have recently determined, a hearing officer may, of course, review whether the terms of the RIF policy were properly applied to a particular employee. See Huntsville City Bd. of Educ. v. McLemore, 114 So.3d 55, 57 (Ala.Civ.App.2012) (affirming a hearing officer’s reversal of an employee's termination when the Board had failed to properly apply the retreat provision of the RIF policy).