THOMPSON, Presiding Judge.
On May 7, 2010, Roy D. Nichols, the superintendent of the Mobile County Board of School Commissioners, notified Joann Christopher of his intention to recommend the termination of her employment pursuant to the reduction-in-force policy (“RIF policy”) adopted by the Mobile County Board of School Commissioners (“the Board”) in compliance with § 16-1-33, Ala.Code 1975. The record indicates that budgetary problems necessitated the termination of the employment of a number of the Board’s employees under the RIF policy. The notice provided by the superintendent to Christopher stated, among other things, that the Board planned to conduct a hearing on the proposed termination on June 16, 2010, and that, if the Board affirmed the superintendent’s termination recommendation, Christopher could elect to contest the termination of her employment pursuant § 36-26-104 of the former Fair Dismissal Act (“the FDA”), § 36-26-100 et seq., Ala. Code 1975 (repealed and replaced by § 16-24C-1 et seq., Ala.Code 1975). On May 17, 2010, Christopher notified the Board of her intent to contest the termination of her employment.
On June 17, 2010, the Board affirmed the termination decision, and Christopher filed a timely notice of appeal of that decision. A hearing officer conducted a hearing on March 16, 2011. On July 12, 2011, the hearing officer entered a decision reversing the termination of Christopher’s employment. The Board filed a timely request that this court accept its appeal. See former § 36-26-104, Ala.Code 1975 (repealed and replaced by § 16-24C-6, Ala.Code 1975). This court granted the Board’s request and accepted the appeal.
As an initial matter, we note that, during the time this appeal has been pending, the Alabama Legislature enacted the Students First Act (“the SFA”), § 16-24C-1 et seq., Ala.Code 1975. The SFA repealed both the former Teacher Tenure Act (“TTA”), §§ 16-24-1 through -38, Ala.Code 1975 (repealed and replaced by § 16-24C-1 et seq., Ala.Code 1975), and the FDA. For *166 the most part, the SFA became effective on July 1, 2011. § 16(b), Act No. 2011-270, Ala. Acts 2011; see also Comment, § 16-24C-14, Ala.Code 1975. However, Act No. 2011-270, the legislation that established the SFA, also specified that some portions of the ■ SFA were to be effective before July 1, 2011.
Specifically, Act No. 2011-270 provides that the section that is now § 16-24C-6(h)(3) became effective at the time the legislation became law, which occurred in this case on May 26, 2011, when it was signed by the governor. § 16, Act No. 2011-270. Specifically, section 16 provides:

“(a) Subdivision (2) and subdivision (3) of subsection (h) of Section 6 shall be effective immediately following passage and approval of this act by the Governor, or its otherwise becoming law.

“(b) Subject to the following terms and qualifications, the remainder of this act shall be effective on July 1, 2011, following passage and approval of this act by the Governor, or its otherwise becoming law:

“(1) Employees who have attained tenured status under the Teacher Tenure Law or nonprobationary status under the Fair Dismissal Act as of the effective date of this act, in the case of tenured teachers, shall be deemed tenured teachers under this act and, in the case of nonprobation-ary employees within the meaning of the Fair Dismissal Act shall be deemed nonprobationary classified employees under this act. Employees who have not attained tenured status under the Teacher Tenure Law or nonprobationary status under the Fair Dismissal Act as of the effective date of this act shall be subject to the terms and provisions of this act respecting the attainment of teacher tenure or nonprobationary status, and all time in service that would have been credited toward the attainment of either tenure under the Teacher Tenure Law or nonprobationary status under the Fair Dismissal Act shall be credited toward the attainment of tenure or nonprobationary status in the corresponding employment category under this act.
“(2) All employment actions and proceedings that have been initiated under either the Teacher Tenure Law or the Fair Dismissal Act that are pending on the effective date of this act shall be completed under the statutory procedures that were in effect on the date the action or proceeding was commenced.”
(Emphasis added.)
Section 16-24C-6 governs grounds for terminations, the procedures for terminations and hearings, and appeals. Subsection (h) of that statute, which is referenced in § 16(a) of Act No. 2011-270, quoted above, provides, in pertinent part:
“(h) The following additional terms, conditions, and limitations apply to terminations and appeals therefrom:
[[Image here]]
“(3) Layoffs or other personnel actions that are unavoidable reductions in the workforce beyond normal attrition due to decreased student enrollment or shortage of revenues as specified in Section 16-1-33, are not subject to challenge or review under this chapter.”
We note that the codification of the SFA in the Alabama Code omits the provisions set forth in § 16 of Act No. 2011-270 concerning the effective dates of that legislation. Instead, the information concerning the effective dates of the SFA is set forth in the Code Commissioner’s Notes to *167 § 16-24C-6 . and § 16-24C-14, Ala.Code 1975. However, “the failure of the publisher ... to incorporate [the full text of § 16, Act No. 2011-270,] into the Code did not affect [the] validity” of that section. Ex parte Rheem Mfg., 524 So.2d 631, 633 (Ala.1988) (explaining that sections of a legislative enactment “dealing with the effective date [of legislation] ... belongs in that category of provisions that customarily are not codified but remain viable and applicable provisions of the legislative enactment”). Thus, subsection 16-24C-6(h)(3), which addresses situations in which employment is terminated pursuant to a RIF policy, took effect on May 26, 2011, when Act No. 2011-270 was signed by the governor. As is specified in § 16(b) of Act No. 2011-270, “the remainder of [the SFA became] effective on July 1, 2011.”
In this case, Nichols notified Christopher on May 7, 2010, that he was recommending to the Board that her employment be terminated pursuant to the Board’s RIF policy and that she could contest his recommendation pursuant to the provisions of the FDA. On June 17, 2010, the Board notified Christopher that it had upheld Nichols’s recommendation and terminated her employment. In that notification, the Board informed Christopher that she had the right to appeal pursuant to the FDA, which was in effect at the time. On June 23, 2010, Christopher filed a notice of appeal, citing the provisions of the FDA as authority for that appeal. The hearing officer conducted a hearing on March 16, 2011. However, the hearing officer entered his decision in this matter on July 12, 2011, after the effective date of § 16-24C-6(h)(3).
This court asked the parties to brief whether § 16-24C-6(h)(3), Ala.Code 1975, was intended to apply to bar actions such as this one that were pending at the time of the enactment of Act No. 2011-270.
This court also allowed the parties in the consolidated appeals — appeal no. 2110252 (Huntsville City Board of Education v. Stranahan) and appeal no. 2110286 (Huntsville City Board of Education v. Holmes) — to submit arguments and appear as amici curiae at oral argument; those two cases are hereinafter referred to as “the Huntsville cases.” Those consolidated appeals, which this court has accepted, concerned appeals from terminations resulting from the Huntsville City Board of Education’s RIF policy.
The parties and the amici curiae each responded to this court’s request for briefs on the issue, and they each appeared at oral argument to address the issue whether § 16-24C-6(h)(3) barred an employee’s appeal of a termination decision made as a result of a RIF policy when the hearing officer entered his or her decision after the effective date of § 16-24C-6(h)(3), Ala. Code 1975. Christopher contended that § 16-24C-6(h)(3) does not preclude her claims. The Board argued, among other things, that because § 16 of Act No. 2011-270 specifies that § 6(h)(2) and (3) of the act (i.e., what is now codified as § 16-24C-6(h)(2) and (3)) were to take effect immediately, those subsections applied to this action, which was pending, but had not yet been decided, at the time of the passage of the SFA legislation. The Huntsville City Board of Education, as amicus curiae, submitted the only brief to address the issue whether retroactive application of § 16-24C-6(h)(3) is appropriate; the parties and the other amici curiae each addressed that issue in their arguments before this court during oral argument.
“The general rule is that retrospective application of a statute is not favored and legislative intent to make a statute retrospective must be clearly expressed before the statute will be construed to *168 operate retrospectively.” Kittrell v. Benjamin, 396 So.2d 93, 94 (Ala.1981).
“Our Supreme Court has applied a state constitutional provision in determining whether an act of the legislature can be applied retrospectively and has concluded that the constitution requires that the title of the act reflects the legislature’s intent for retroactive effect:
“ ‘This Court has interpreted § 45 [Alabama Constitution of 1901,] as imposing the requirement that where an act is intended to have retroactive application, the title of the act must “fairly and reasonably indicate] that the act is retrospective.” Lindsay v. United States Savings and Loan Association, 120 Ala. 156, 24 So. 171 (1897); see Gayle v. Edwards, 261 Ala. 84, 72 So.2d 848 (1954).’
“Alabama Educ. Ass’n v. Grayson, 382 So.2d 501, 505 (Ala.1980).
“The Court of Appeals, after conducting a detailed analysis of whether a statute should be applied retroactively, stated as follows:
“ ‘It is a fundamental precept of our jurisprudence that substantive legal interests spring from the law in effect at the time such interests are alleged to have arisen or to have been violated. For this reason, undoubtedly induced by a sense [of] what is fair and what is right, courts have uniformly been reluctant to construe statutes as having retroactive operation, even though non offensive constitutionally, unless the intent of the legislature that a statute is to operate retroactively is made certain, either by actual words, or by clear and necessary implication.’
“Alabama Power Co. v. Director of Indus. Relations, 36 Ala.App. 218, 221, 54 So.2d 786, 788 (1951) cert. denied.
“Our Supreme Court restated the presumption against retroactive application of laws, as follows:
“ ‘The judiciary generally disdains retroactive application of laws because such application usually injects undue disharmony and chaos in the application of law to a given fact situation; therefore, the courts will generally indulge every presumption in favor of prospective application unless the legislature’s intent to the contrary is clearly and explicitly expressed. City of Brewton v. White’s Auto Store, Inc., 362 So.2d 226 (Ala.1978).’
“Lee v. Lee, 382 So.2d 508, 509 (Ala.1980).”
State Home Builders Licensure Bd. v. Grzelak, 705 So.2d 406, 408 (Ala.Civ.App.1997).
In this case, the SFA does not expressly address whether the legislature intended that § 16-24C-6(h)(2) and (3) have retroactive application, as have other legislative enactments. See § 13A-5-9.1, Ala.Code 1975 (“The provisions of Section 13A-5-9 shall be applied retroactively-); § 32-5A-12, Ala.Code 1975 (“This chapter shall not have a retroactive effect....”); § 11-44C-96, Ala.Code 1975 (“This exemption from all municipal sales and use taxes and gross receipts taxes shall be retroactive to October 1, 1999.”); see also § 36-30-5, Ala.Code 1975, Code Commissioner’s Note (noting that § 4 of Act No. 2008-480, Ala. Acts 2008, which amended § 36-30-5, provided that “ ‘[t]his act shall become effective immediately following its passage and approval by the Governor, or its otherwise becoming law, and shall be retroactive to January 1, 2006’ ”); and § 45-22-234(b), Ala. Code 1975 (“This section shall have retroactive effect to January 1, 1999, upon its passage and approval by the Governor or upon its otherwise becoming a law.”).
*169 In the absence of an express legislative statement of retroactivity, the courts must determine, from the statute as a whole, whether the legislature intended that the statute have retroactive application. In enacting Act No. 2011-270, it is clear that the legislature intended that that part of the legislation governing RIF cases take effect immediately upon passage, although it is not clear whether the legislature intended that that section apply to actions then pending but undecided.
Regardless, whether a statute may be applied retroactively turns on the issue whether the statute affects substantive or remedial rights. Ex parte Burks, 487 So.2d 905 (Ala.1985); State Home Builders Licensure Bd. v. Grzelak, supra. Substantive laws affect vested rights or alter a party’s legal status. State Home Builders Licensure Bd. v. Grzelak, supra. “Substantive law” is “[t]hat part of law which creates, defines, and regulates rights and duties of parties, as opposed to ‘adjective, procedural, or remedial law,’ which prescribes method of enforcing the rights or obtaining redress for their invasion.” Black’s Law Dictionary 1429 (6th ed. 1990). Remedial statutes are those “ ‘which impair no contract or vested right, and do not disturb past transactions, but preserve and enforce the right and heal defects in existing laws prescribing remedies.’ ” Jones v. Casey, 445 So.2d 873, 875 (Ala.1983) (quoting Dickson v. Alabama Mach. & Supply Co., 18 Ala.App. 164, 165, 89 So. 843, 844 (1921)).
Generally, remedial statutes may have retroactive application, but substantive statutes may not be applied retroactively. See Kittrell v. Benjamin, 396 So.2d 93, 95 (AIa.1981) (a statute can have retroactive application if it affects procedural as opposed to substantive rights); United States Steel & Mining Co. v. Riddle, 627 So.2d 455, 457-58 (Ala.Civ.App.1993)
(“[W]e must decide whether the standard of review in the newly enacted Workers’ Act is truly remedial, and thus applicable retrospectively, or if it is substantive and therefore only prospectively operable.”). Our supreme court has quoted the following explanation for allowing retroactive application of remedial statutes: “ ‘ “Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule [is] instituted after the conduct giving rise to the suit does not make application of the rule [] retroactive.”’” BT Secs. Corp. v. W.R. Huff Asset Mgmt. Co., 891 So.2d 310, 316 (Ala.2004) (quoting Professional Mgmt. Assocs., Inc., Employees’ Profit Sharing Plan v. KPMG, LLP, 335 F.3d 800, 803 (8th Cir.2003), quoting in turn Landgraf v. USI Film Prods., 511 U.S. 244, 275, 114 S.Ct. 1483,128 L.Ed.2d 229 (1994)).
Before this court, the Board argued that § 16-24C-6(h)(3) is remedial in nature and, therefore, that it can validly have retroactive application. In making that argument, the Board maintained that RIF layoffs are made pursuant to statutory guidelines set forth in § 16-1-33, Ala.Code 1975, and it contended that the SFA affects the procedure by which an employee may assert a violation of the mandates of § 16-1-33. Section 16-1-33 provides, in pertinent part:
“(a) When used in this section, the following words shall have the following meanings:
[[Image here]]
“(3) Layoff. An unavoidable reduction in the work force beyond normal attrition due to decreased student enrollment or shortage of revenues.
“(b) Each board shall adopt a written reduction-in-foree policy consistent with Section 16-1-30. The policy shall include, but shall not be limited to, layoffs, recalls, and notifications of layoffs and *170 recalls. The reduction-in-force policy of the board shall be based on objective criteria.”
In making its argument that § 16-24C-6(h)(3) is remedial or procedural in nature, the Board contends that “[t]he employees’ substantive rights, i.e., that reductions in force must be taken in accordance with a written policy adopted in compliance with § 16-1-33, are unaffected by [§ 16-24C-6(h)(3)]. That section only affects the remedy or procedure for addressing violations of the mandates of § 16-1-33.”
With regard to the distinction whether a statute affects substantive or procedural rights, our supreme court has noted:
“‘“[I]t is simplistic to assume that all law is divided neatly between ‘substance’ and ‘procedure.’ A rule of procedure may have an impact upon the substantive result and be no less a rule of procedure on that account.... As said in Hanna v. Plumer, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8, 16-17 (1965), ‘The line between “substance” and “procedure” shifts as the legal context changes. “Each implies different variables depending upon the particular problem for which it is used.”’
Middleton v. Caterpillar Indus., Inc., 979 So.2d 53, 60 (Ala.2007) (quoting Schoenvogel v. Venator Group Retail, Inc., 895 So.2d 225, 250 (Ala.2004), quoting in turn Busik v. Levine, 63 N.J. 351, 364-65, 307 A.2d 571, 578 (1973)).
In Ex parte Burks, 487 So.2d 905, 906 (Ala.1985), our supreme court considered whether “the amendment to Code 1975, § 36-26-27(a), effective July 28, 1983, which allows the State Personnel Board to impose discipline less severe than termination upon a state merit system employee, applies] retroactively to the review of a Board determination to terminate a state employee if the review was pending before the circuit court at the effective date of the amendment?” In determining that the statute did apply retroactively, our supreme court stated:
“The amended statute at issue here does not expressly contain any provision for retroactive application, nor is there a clear legislative intent that the statute so operate. Therefore, the amended provision may operate retroactively only if it is found to be ‘remedial.’
“Remedial statutes are those relating to remedies or modes of procedure. Street v. City of Anniston, 381 So.2d 26 (Ala.1980); Harlan v. State, 31 Ala.App. 478, 18 So.2d 744 (194[4]). In Jones v. Casey, [445 So.2d 873 (Ala.1983)], we reiterated the definition of ‘remedial statutes’
“ ‘... as those “which impair no contract or vested right, and do not disturb past transactions, but preserve and enforce the right and heal defects in existing laws prescribing remedies.” Dickson v. Alabama Mach, and Supply Co., 18 Ala.App. 164, 165, 89 So. 843, 844, cert. denied, 206 Ala. 698, 89 So. 922 (1921).’
“445 So.2d at 875.
“We believe that the amendment to Code 1975, § 36-26-27(a), is remedial in nature, touching upon matters of procedure rather than substantive rights, and corrects what may be perceived as a defect in the original statute. Moreover, no substantial right is impaired by the expanded remedies granted to the Personnel Board to be applied in reviewing disciplinary measures against state merit employees. This is not to say that substantial rights may not be affected by the application of the statutory change, but that this effect is only the result of the utilization of what is essen *171 tially a matter of Personnel Board procedure.”
Ex parte Burks, 487 So.2d at 907.
We cannot agree with the Board that § 16-1-33 provides substantive rights to the employees of a board. Rather, that section sets forth requirements for a board to meet in creating and adopting a RIF policy. Thus, we do not find persuasive the Board’s argument that § 16-24C-6(h) is a procedural statute intended to implement the requirements of the substance of § 16-1-33.
Former § 36-26-102 of the FDA, which was effective at the time Christopher was notified of the decision to seek termination of her employment and at the time she first contested that notification, provided:
“Upon the completing by the employee of said probationary period, said employee shall be deemed employed on a nonprobationary status and said employee’s employment shall thereafter not be terminated except for failure to perform his or her duties in a satisfactory manner, incompetency, neglect of duty, insubordination, immorality, justifiable decrease in jobs in the system, or other good and just causes; provided, however, such termination of employment shall not be made for political or personal reasons on the part of any party recommending or voting to approve said termination.”
We conclude that former § 36-26-102, Ala. Code 1975, and other provisions of the FDA provided Christopher a substantive right to challenge the termination of her employment pursuant to a RIF policy. The SFA, in § 16-24C-6(h)(3), curtails that substantive right. Accordingly, we hold that § 16 — 24C—6(h)(3) is not applicable retrospectively in this case.
With regard to the merits of the appeal, the Board contends that the hearing officer erred in reversing its termination decision. We note that “ ‘ “[t]he decision of the hearing officer shall be affirmed on appeal unless the Court of Civil Appeals finds the decision arbitrary and capricious. ...” ’ [Bishop State Cmty. Coll, v.] Williams, 4 So.3d [1152,] 1157 [ (Ala.Civ.App.2008) ] (quoting § 36-26-104(b), Ala.Code 1975).” Bishop State Cmty. Coll. v. Thomas, 13 So.3d 978, 986 (Ala.Civ.App.2008).
This court has explained, in the context of cases involving terminations due to disciplinary reasons, the considerations the hearing officer or a court must employ in determining whether a board, pursuant to former § 36-26-102, Ala.Code 1975, justifiably terminated the employment of a non-probationary employee such as Christopher:
“If an employee properly contests the termination of his or her employment, see § 36-26-103(b), Ala.Code 1975 (setting out the procedure for contesting a termination under the FDA), the employee is entitled to a de novo hearing. § 36-26-104(a), Ala.Code 1975. Pursuant to the statutory charge, the hearing officer should first decide whether the employer has ‘stated and proved proper grounds for terminating an employee’s employment.’ Bishop State Cmty. Coll. v. Williams, 4 So.3d 1152, 1157 (Ala.Civ.App.2008). If the hearing officer concludes that the employer has met its initial burden, the hearing officer shall then decide whether the employer dismissed the employee to further an improper motive, i.e., for personal or political reasons. See Ex parte Wilson, 984 So.2d 1161, 1171 (Ala.2007) (construing the Teacher Tenure Act, § 16-24-1 et seq., Ala.Code 1975). Finally, the hearing officer ‘shall determine which of the following actions should be taken rela *172 tive to the employee: Termination of the employee, a suspension of the employee, with or without pay, a reprimand, other disciplinary action, or no action against the employee.’ § 36-26-104(a), Ala. Code 1975.”
Bishop State Cmty. Coll. v. Thomas, 13 So.3d at 985.
In reaching his July 12, 2011, decision in this case, the hearing officer concluded that the Board’s decision to implement the RIF policy was financially justified. The hearing officer set forth a detailed statement of the evidence presented on the issue of the financial difficulties facing the Board; no useful purpose would be served by detailing that evidence in this opinion. Suffice it to say that the hearing officer’s conclusions that financial conditions over the last few years have resulted in the proration of school-system budgets throughout Alabama, that the Board had faced several recent cutbacks to its income, and that the Board’s financial situation worsened during the 2010-2011 school year are clearly supported by the evidence presented in this matter. Thus, we conclude that the hearing officer determined that the Board had met its initial burden of stating and proving proper grounds for terminating Christopher’s employment, which, in this case, was a justifiable decrease in jobs within the system. See Bishop State Cmty. Coll. v. Thomas, 13 So.3d at 985; see also Mobile Cnty. Bd. of Sch. Comm’rs v. Long, 46 So.3d 6, 9 (Ala.Civ.App.2010) (“The hearing officer was authorized to determine whether the Board proved the asserted ground for the dismissal — a justifiable decrease in jobs in the school system. See former § 36-26-102 and -104(a).”).
In this case, there was no allegation that the Board had an improper motive when it terminated Christopher’s employment pursuant to the RIF policy. See former § 36-26-102, Ala.Code 1975 (providing that a “termination of employment shall not be made for political or personal reasons on the part of any party recommending or voting to approve said termination”); and Bishop State Cmty. Coll. v. Thomas, 13 So.3d at 985. We also note that, unlike the appellant in Mobile County Board of School Commissioners v. Long, supra, there was no allegation that the Board did not comply with its RIF policy in reaching its decision to terminate Christopher’s employment. It also does not appear that Christopher contested the need for reductions in staffing in the school system caused by the financial crisis facing the Board and other school systems throughout the state.
Rather, Christopher argued that, based on her employment history with, and job performance for, the school system, her employment should not have been terminated. Christopher also argued that additional federal funds for teacher and other employees’ salaries became available in August 2010 and that the Board should have used those federal funds to rehire her at that time. The evidence presented with regard to those arguments is as follows.
Christopher was one of three arts instructors whose employment was terminated pursuant to the RIF policy. The undisputed evidence presented to the hearing officer was that Christopher was an excellent employee and instructor. The evidence and testimony indicated that Christopher had made substantial contributions toward developing and implementing the arts program in the school system. In addition, evidence was presented indicating that Christopher had had a positive impact on a number of students within the school system. The Board conceded that it had no complaint about Christopher’s work performance and that it would have preferred to maintain her employment.
*173 The hearing officer also received evidence indicating that in August 2010 the United States Congress created the Education Jobs Fund. Pub.L. No. 111-226, 124 Stat. 2389. Pursuant to that program, the federal government allocated funds to local educational agencies for the creation and retention of education jobs. § 101(3), Pub.L. No. 111-226. That federal legislation specified that the federal funds were to be “used only for compensation and benefits and other expenses, such as support services, necessary to retain existing employees, to recall or rehire former employees, and to hire new employees, in order to provide early childhood, elementary, or secondary educational and related services.” § 101(5)(A), Pub.L. No. Ill— 226.
Based on the notification in August 2010 that funds from that federal legislation would be available, the Board rehired some employees whose employment had been terminated pursuant to the RIF policy. Dinish Simpson, the chief financial officer for the Mobile County School System, testified that when the school system learned it was to receive a portion of those federal funds, the Board decided to use the funds to rehire certain teachers, custodians, and assistant principals and to hire some new school-bus drivers; the federal funds were to be used to pay those employees’ salaries.
In reversing the Board’s decision to terminate Christopher’s employment, the hearing officer determined that although the Board’s implementation of the RIF policy was justified and that reductions in staff were necessary,[1] the Board’s decision to terminate Christopher’s employment pursuant to the RIF policy was not justified. The hearing officer cited former § 36-26-104(a), which provided that, after he or she conducts a de novo hearing, the hearing officer must “determine which of the following actions should be taken relative to the employee: Termination of the employee, a suspension of the employee, with or without pay, a reprimand, other disciplinary action, or no action against the employee.” Former § 36-26-104(a), Ala. Code 1975. The hearing officer concluded that, in the context of RIF cases, former § 36-26-104(a) allowed a hearing officer to determine that, even if the RIF is necessary, it should not be applied to a specific employee.
In determining that the Board improperly terminated Christopher’s employment pursuant to the RIF policy, the hearing officer found that Christopher was an excellent worker and instructor, that her employment had benefited the school system as a whole, and that she had positively impacted the lives of many of the school system’s students. However, the hearing officer “hasten[ed] to add that [he] certainly [did] not attribute any ill will to any decision maker in this case. All of them made hard decisions and choices in awfully hard times, and every decision was made in good faith.” (Emphasis added.) The hearing officer also concluded that the Board had erred in failing to use some of the federal funds acquired after the termination of Christopher’s employment to rehire Christopher, and he calculated that the Board’s cost savings, achieved through the terminations made pursuant to the RIF policy, would not be significantly adversely impacted by rehiring Christopher.
We cannot agree with the hearing officer’s determination that former *174 § 36-26-104(a) authorized him to determine, in the absence of allegations of improper motive, whether the termination of a particular employee’s employment was justifiable under a RIF policy. In situations in which an employee’s employment is terminated under the FDA as a form of discipline, the alternatives listed in former § 36-26-104(a) have a function. The hearing officer is allowed to consider whether, in light of the particular conduct of the employee and the facts of the case, termination was warranted or whether a lesser or no disciplinary sanction, i.e., “suspension of the employee, with or without pay, a reprimand, other disciplinary action, or no action,” would be warranted under the circumstances. In the case of a termination pursuant to a RIF policy, however, the conduct of the employee is not at issue. The purpose of a termination pursuant to a RIF policy is cost savings to the employing board. Where a termination of employment is made because of a justifiable decrease in the jobs in the system, see former § 36-26-102, the selection of any other form of discipline or sanction under former § 36-26-104(a) would not achieve the long-term cost-savings goal of the termination pursuant to a RIF policy.
Further, in the context of similar terminations under teacher-tenure laws, our courts have rejected the standard utilized by the hearing officer in this case. In Williams v. Board of Education of Lamar County, 263 Ala. 372, 82 So.2d 549 (1955), Williams’s employment was terminated pursuant to a predecessor to the TTA that provided that a teacher’s employment could be terminated for, among other reasons, a “ ‘justifiable decrease in the number of teaching positions.’ ” Williams, 263 Ala. at 375, 82 So.2d at 552 (emphasis omitted). The board at issue in that case cited a decrease in jobs as the basis for seeking to terminate Williams’s employment, and our supreme court agreed that the evidence supported a termination for that reason. Williams argued, however, that her employment was terminated for personal reasons, specifically, for her failure to move to the school system in which she was employed, which was a violation of a school-system rule. This court rejected that argument, noting that the board in that case had not sought to terminate Williams’s employment for that purported rule violation. Further, the court held that once it had been determined that the evidence supported the board’s determination that there had been a justifiable decrease in the number of teaching positions available, no further inquiry was necessary with regard to the termination. Our supreme court explained:
“As we see it, the only pertinent inquiry was whether there was a ‘justifiable decrease in the number of teaching positions’. That being established, the reason for selecting [Williams’s] contract as the one to be cancelled was not open to inquiry. We find nothing in the Tenure Act establishing a criterion for determining what particular tenured teacher’s contract should be cancelled when there is a ‘justifiable decrease in the number of teaching positions.’ In such situation, it seems to us that the right of selection is a matter resting entirely with the employing Board of Education.”
Williams, 263 Ala. at 375, 82 So.2d at 552. See also May v. Alabama State Tenure Comm’n, 477 So.2d 438, 440 (Ala.Civ.App.1985) (“[W]hen a Board is faced with a reduction in teaching positions, much must be left to the ‘enlightened discretion’ of the Board after considering the entire situation.” (quoting Woods v. Board of Educ. of Walker Cnty., 259 Ala. 559, 561, 67 So.2d 840, 841 (1953))).
In Walker v. Montgomery County Board of Education, 85 So.3d 1008, 1015 (Ala.Civ.App.2011), this court cited the *175 above-quoted portion of Williams, supra, in rejecting a similar argument asserted by Walker, a contract principal whose employment had been terminated pursuant to a provision in her contract that allowed termination for, among other things, “ ‘[a] justifiable decrease in the number of positions due to decreased enrollment or decreased funding.’”[2] 85 So.3d at 1016. Also, like Christopher in this case, Walker had argued that the board had other options available to it that would allow her to remain employed; in that case, Walker contended that the employment of other, probationary principals in other schools could have been terminated. This court rejected Walker’s arguments, concluding:
“Although Walker’s contract falls under the [Teacher Accountability Act (‘TAA’)] and not the TTA, we have found no provision in the TAA that ‘establishes] a criterion for determining what particular [contract principal’s] contract should be cancelled when there is a “justifiable decrease in the number of [principal] positions.” ’ Williams, 263 Ala. at 375, 82 So.2d at 552. The Board was entitled to make the decision regarding which contract principals would be nonrenewed or would have their contracts canceled. Courts are not permitted to usurp the role of the school board and cannot determine that another course of action other than the one taken by the school board might have been wiser or more equitable. State ex rel. Steele v. Board of Educ. of Fairfield, 252 Ala. 254, 261, 40 So.2d 689, 695 (1949), overruled on other grounds, Ex parte Jackson, 625 So.2d 425 (Ala.1992).”
Walker, 85 So.3d at 1015-16.
In this case, like the appellants in Williams, supra, and Walker, supra, Christopher’s employment was terminated pursuant to a statutory provision allowing such a termination due to a “justifiable decrease” in the number of jobs within the system caused by financial constraints. The FDA has often been interpreted with reference to cases interpreting teacher-tenure law or caselaw. See Bishop State Cmty. Coll. v. Thomas, 13 So.3d at 985 (citing Ex parte Wilson, 984 So.2d at 1171, and Madison Cnty. Bd. of Educ. v. Wilson, 984 So.2d 1153 (Ala.Civ.App.2006) (both construing the TTA)); and Athens State Coll. v. Ruth, 795 So.2d 703, 706 (Ala.Civ.App.1999), rev’d on other grounds, Ex parte Athens State Coll., 795 So.2d 709 (Ala.2000). Accordingly, given that precedent and the similarity in the statutory language at issue in this case to that of Williams, supra, and Walker, supra, we apply the reasoning and holdings of Williams and Walker to the facts of this case.
It is undisputed in this case that the RIF policy was necessary and that, given the financial condition of the school system, terminations of the employment of some of the Board’s employees was required pursuant to the RIF policy. As with the TTA and the Teacher Accountability Act, § 16-24B-1 et seq., Ala.Code 1975, there are no established criteria set forth in the FDA for determining which of a board’s employees should be terminated when a RIF policy must be implemented. See Williams, supra; and Walker, supra. Further, there is no allegation that the Board did not comply with its RIF policy in reaching its termination decision in this case. Regardless, the hearing officer determined that the Board erred in terminating Christopher’s employment. The hearing officer was correct that Christopher’s *176 Service through her employment has been invaluable, a fact that is not disputed by the Board. However, once the determination that Christopher’s employment was properly terminated due to a justifiable decrease in jobs within the system was made, the hearing officer had no authority to second-guess the termination decision of the Board.
We note that the experience of this court leads us to conclude that many, if not all, of the employees in various school systems throughout the state are excellent employees who have had positive impacts on school systems through their employment. The need to terminate the employment of teachers and other school-system employees is an unfortunate burden faced by many boards of education throughout the state. We agree with the Board that the responsibility for making the difficult decisions regarding which positions to eliminate pursuant to a justified implementation of a RIF policy rests with the Board and that hearing officers and the courts “are not permitted to usurp the role of the school board.” Walker, 85 So.3d at 1016.
Based on the foregoing, we conclude that the hearing officer erred in reversing the Board’s decision to terminate Christopher’s employment pursuant to its RIF policy. We reverse the hearing officer’s decision and remand the cause for the entry of a decision in conformity with this decision.
REVERSED AND REMANDED.
PITTMAN and BRYAN, JJ., concur.
THOMAS and MOORE, JJ., concur in the result, without writings.

. The evidence indicated that approximately 90% of the Board’s budget was expended on employee-related expenses.

. Walker v. Montgomery County Board of Education, supra, was determined under the procedure set forth in the Teacher Accountability Act, § 16-24B-1 et seq., Ala.Code 1975, which governs the employment of school principals.