PITTMAN, Judge.
The Huntsville City Board of Education (“the Board”) appeals from a hearing officer’s decision reversing the Board’s approval of the termination of the employment of Margaret Johnson; Johnson cross-appealed, asserting that the hearing officer erred in determining that the Board’s notice of termination was sufficient.

Procedural History

On April 25, 2011, Dr. Ann Roy Moore, who was at that time the superintendent of the Board, sent a notice to Johnson and the Board of her intent to recommend the termination of Johnson’s employment; that notice stated the following reason for the proposed termination of Johnson’s employment:
“1. Due to financial circumstances, the Board must reduce the number of its employees. To accomplish this, the Board has adopted a Reduction in Force Plan. The selection of the employees to be terminated is based upon the job classifications affected by the Reduction in Force Plan and years of service within the Huntsville School System (those with fewer years of service in each specifically identified area to be terminated before those with greater seniority).”
The Board upheld Dr. Moore’s recommendation to terminate Johnson’s employment at a special session on May 17, 2011, and Dr. Moore sent a letter notifying Johnson of the Board’s decision and of her right to contest the Board’s decision within 15 days. Johnson timely initiated a contest of the termination in a letter to the Board and Dr. Moore, and a hearing was subsequently held on the matter before a hearing officer.
On January 4, 2012, the hearing officer rendered a decision containing findings of fact and conclusions of law; the decision stated, in pertinent part:
“To support the proposed adverse action, the Board must[ ] show its actions were rational, reasonable, relevant to its task, and logical. In less ephemeral and more concrete terms, the Board must *471 provide sufficient proof that it was suffering a severe financial hardship, that the actions taken were in response to that hardship, and that it is reasonably likely that the actions will improve the financial condition of the Board.
“The Hearing Officer will assume— without deciding — that the Board is suffering a substantial financial hardship. The Board has presented sufficient evidence, including its budgetary shortfall and a comparison of rates of support to certified staff in similar school systems to at least presume a financial hardship for purposes of this award. This, however, is merely a necessary precondition and not, in and of itself, sufficient to provide just cause or establish a justifiable decrease in positions. The Board also has the burden of proving by sufficient evidence that the action taken in response to this hardship is a necessary and reasonable step designed to directly improve the fiscal position of the institutions. Here, the Board failed to carry its burden.
“... Merely eliminating [Johnson’s] position, without reducing or eliminating the duties or the cost of performing those duties may reduce the amount of salary in one line item of the Board’s budget, but it does not provide any real savings to the Board. The proposed termination may not be supported by shifting amounts in line items in a budget; instead, it must meaningfully address the financial troubles and provide direct and measurable relief from those troubles.”
The hearing officer concluded that the Board had failed to present evidence indicating that terminating Johnson’s employment would “have significant fiscal benefit to the Board,” found that no action should be taken against Johnson, and sustained Johnson’s objection to the Board’s proposed termination of her employment.
The Board timely appealed to this court, and Johnson timely cross-appealed. This court entered orders requiring the parties to file letter briefs setting forth “special and important reasons” for accepting the appeal and the cross-appeal, pursuant to Ala.Code 1975, former § 36-26-104(b), a part of the former Fair Dismissal Act (“the former FDA”), Ala.Code 1975, § 36-26-100 et seq.[1] The parties complied, and this court accepted both the appeal and the cross-appeal.

Facts

Dr. Craig Pouncey, the Deputy Superintendent for Finance and Administration for the State Board of Education, testified that one of his duties was to make sure that the Board complied with the State’s financial requirements for school districts in Alabama.[2] Among other things, the School Fiscal Accountability Act (“the SFAA”), Ala.Code 1975, § 16-13A-1 et seq., requires the Board to “maintain a minimum reserve fund equal to- one month’s operating expenses.” Ala.Code 1975, § 16-13A-9(a). According to Dr. Pouncey, during the 2009 fiscal year, the Board had a negative balance of $20 million; thus, because the Board was also *472 required to achieve a $16 million fund balance for one month’s operating expenses, the Board had a deficit of approximately $86 million. Dr. Pouncey testified that, to address that deficit, he had suggested, among other things, changing some bus routes, decreasing the number of vehicles maintained by the Board, tying salaries to the minimum amount received from the State, adopting a salary freeze for classified or support employees, and reducing staff. He testified that, if the Board had not adopted those recommendations to address the deficit, the State Board of Education would have intervened and taken over control of the school system.
Belinda Williams, the director of the Board’s human-resources department, testified that, at a February 10, 2011, meeting, the Board approved an initial reduction-in-force (“RIF”) plan that listed 29 job classifications to be terminated, which classifications included 137 employees.
Dr. Ed Richardson, who was hired by the Board in February 2011, after the approval of the initial RIF plan, to serve as a consultant to the superintendent, testified that the Board had had no choice but to reduce personnel.[3] He stated that he, like Pouncey, first looked at reducing expenses in areas that would not affect employees, including selling vehicles, outsourcing the Board’s fleet management, changing bus routes, and changing salaries so that new employees would be employed according to the State’s minimum-salary schedule. He testified, however, that, at the time he made his presentation to the Board regarding personnel cuts, he did not know to what extent the Board had followed through on the recommendations as to transportation and that he also had been unable to estimate the amount of revenue that would be generated from the sale of vehicles. Dr. Richardson stated that he presented the Board with a two-year plan pursuant to which it would make half of the budget cuts in the 2012 fiscal year and half in the 2013 fiscal year for a financial target of $40 million in savings. He testified that he had increased the targeted savings to $40 million based on concerns that the legislature would make changes effectively decreasing the amount the school system would receive for teachers and because he was not confident that the amount of the savings would turn out as predicted because the figures were constantly evolving.
According to Dr. Richardson, in making cuts, he attempted to maintain the integrity of the classroom. He stated that, in determining which positions to terminate, he spoke with supervisors or staff in various departments within the school system to determine the absolute minimum the departments could operate with and that, in some instances, he had had to cut more than the supervisors were willing to give up. Dr. Richardson and Williams both testified that, once Dr. Richardson had identified positions to be terminated, he had consulted with Williams to determine, based on seniority and a supplemental RIF plan, which employees within a specific job classification would be terminated.
Dr. Richardson testified that the initial RIF plan, which he had not participated in developing, had terminated probationary support employees, or those who had been employed by the school system for less than three years. According to Dr. Richardson, in the supplemental RIF plan, which was passed by the Board at a meeting on April 21, 2011, the Board terminated 4.5 nontenured certified administrators, *473 or assistant principals, 154 nontenured certified teachers, and 45 additional probationary support employees. He testified that adopting his proposed recommendations would save the Board $23 million each year of the two-year plan.
Williams testified that Johnson was the only printer employed by the Board; her position was listed in the- supplemental RIF. Wendy Salandy, the print-shop foreperson, testified that she supervised Johnson, who printed books, cards, and forms for the school system, and that it would be difficult to continue operating the print shop without Johnson. Salandy stated that, in busy months, she needed three people, including herself and Johnson, working in the print shop and that, if Johnson’s employment was terminated, she would be the only worker remaining in the print shop. She stated that she did not agree with the recommendation to terminate Johnson’s employment. Marc Sel-don, the materials coordinator for the Board, testified that he supervised the print shop, among other areas. Seldon testified that he had communicated with Dr. Richardson before the supplemental RIF had been implemented and that he and Dr. Richardson had discussed that, if everyone in the print shop were subject to the supplemental RIF, the schools would be subject to additional costs in having their work printed. He stated that, in his opinion, having the print shop saved the school system money.

Discussion

The Board argues that the hearing officer erred in requiring the Board to prove that the action taken in response to the presumed financial hardship “is a necessary and reasonable step designed to directly improve the fiscal position of the institutions” and that “its actions were rational, reasonable, relevant to its tasks, and logical.” . The Board further argues that, after first presuming that the Board is suffering a substantial financial hardship, the hearing officer erred in concluding that the Board had failed to show that its actions were in response to that financial hardship.
In the notice provided to Johnson, the Board indicated that her proposed termination was due to financial circumstances, requiring the Board to reduce the number of its employees. In Williams v. Board of Education of Lamar County, 263 Ala. 372, 82 So.2d 549 (1955), a case to which a teacher’s employment was terminated based on a “decrease in the number of teaching positions,” the Alabama Supreme Court stated that “the only pertinent inquiry was whether there was a ‘justifiable decrease in the number of teaching positions.’ ” 263 Ala. at 375, 82 So.2d at 552. In Board of School Commissioners of Mobile County v. Christopher, 97 So.3d 163, 176 (Ala.Civ.App.2012), this court adopted that, and other, reasoning and determined that, “once the determination that [the employee’s] employment was properly terminated due to a justifiable decrease to jobs within the system was made, the hearing officer had no authority to second-guess the termination decision of the Board.” Thus, in the present case, the Board was required to prove the existence of poor financial circumstances and that a rational response to that condition would be to decrease the number of employees in the school system.
Once the Board made such a showing, the burden shifted to Johnson to prove that the supplemental RIF plan was not a rational response to the Board’s financial circumstances; that the Board failed to follow its supplemental RIF plan, see Mobile Cnty. Bd. of Sch. Comm’rs v. Long, 46 So.3d 6 (Ala.Civ.App.2010); that the Board terminated Johnson’s employment for personal or political reasons, see Ala.Code *474 1975, former § 36-26-102; or that the Board had retained a probationary employee. See, e.g., Pickens Cnty. Bd. of Educ. v. Keasler, 263 Ala. 231, 82 So.2d 197 (1955). The hearing officer required the Board to prove “that it was suffering a severe financial hardship, that the actions taken were in response to that hardship, and that it is reasonably likely that the actions will improve the financial condition of the Board.” In Christopher, however, this court concluded that, once it is determined that there is a “ ‘ “justifiable decrease in the number of positions due to decreased enrollment or decreased funding,” ’ ” courts may not usurp the role of the school board in determining which positions would be canceled. Christopher, 97 So.3d at 175 (quoting Walker v. Montgomery Cnty. Bd. of Educ., 85 So.3d 1008, 1016 (Ala.Civ.App.2011)). See also Williams, 263 Ala. at 375, 82 So.2d at 552 (when there is a “justifiable decrease in the number of teaching positions,” “the right of selection is a matter resting entirely with the employing Board of Education”). Thus, to the extent the hearing officer erroneously added an element requiring the Board to justify the termination of Johnson’s employment over that of another similarly situated employee, that addition was in error. Because the hearing officer did not reach that final element, however, we conclude that the error was harmless. See Rule 45, Ala. R.App. P.
With regard to the question whether the Board had proved that it was suffering a financial hardship, the hearing officer assumed, without deciding, that it was and proceeded to determine that the Board had failed to prove that it had adopted the supplemental RIF plan in response to that financial hardship. We agree with the Board that the hearing officer erred in that regard.
The hearing officer observed that the Board had presented no evidence indicating the cost savings that would be derived from the termination of Johnson’s employment, opining that eliminating her position, “without reducing or eliminating the duties or the cost of performing those duties!,] may reduce the amount of salary in one line item of the Board’s budget, but it does not provide any real savings to the Board.” The hearing officer determined that the Board had presented no evidence of any cost savings to be derived from the proposed termination of Johnson’s employment and noted that Salandy had testified that “the Print Shop could not be operated without a person filling the Employee’s duties” and that Seldon had indicated that the print shop provided a net cost savings to the Board compared to outsourcing that work.
We note first that Salandy testified that she would be the only employee remaining in the print shop and that operating the print shop without Johnson would be “difficult.” Seldon testified that he and Dr. Richardson had discussed that, if everyone in the print shop were subject to the supplemental RIF, the schools would be subject to additional costs for their printing. There is no indication in the testimony, however, that terminating Johnson’s employment would result in the closing of the print shop. Regardless, the hearing officer’s analysis, requiring the Board to provide evidence of “the value of the work produced” by a particular employee, violates the rule established in Chñstopher and Williams, supra, that the courts may not usurp the role of the school board in determining which employees should be selected in reducing the number of positions.
The testimony of both Dr. Pouncey and Dr. Richardson indicated that the terminations made in the supplemental RIF *475 plan were necessary in balancing the Board’s budget. Dr. Richardson testified that he had attempted to make cuts that least impacted the classroom and that the supervisors he spoke with were not willing to give up the number of employees he was required to cut. John F. Brown, the director of facilities, maintenance, construction, transportation, and safety for the school system, testified that some people he had supervised had been terminated from their employment and that he disagreed with the decision to terminate those positions. By effectively concluding that the Board was required to present a cost-benefit analysis regarding “the value of the work produced” by each employee to prove that the specific terminations enacted in the supplemental RIF rationally addressed the financial circumstances of the Board, the hearing officer impermissibly attempted to determine whether “another course of action other than the one taken by the school board might have been wiser or more equitable.” Walker, 85 So.3d at 1016. See also Huntsville City Bd. of Educ. v. Frasier, 122 So.3d 193 (Ala.Civ.App.2013). Because the hearing officer acted outside the statutory review authority conferred by the former FDA, we reverse the hearing officer’s decision, and we remand the cause for further consideration by the hearing officer based on the preceding analysis.
In her cross-appeal, Johnson argues that the Board’s termination notice to her was defective under the provisions of the former FDA. Because the determination of that issue may affect the hearing officer’s decision on remand, we address the argument.[4] Johnson argues that the termination notice failed to provide a “short and plain statement of the facts” supporting the reason given for termination. See Ala. Code 1975, former § 36-26-103(a). Citing Ex parte Soleyn, 33 So.3d 584 (Ala.2009), and Bishop State Community College v. Archible, 33 So.3d 588 (Ala.Civ.App.2009), Johnson asserts, among other things, that the notice failed to mention the reasons for her termination argued by the Board to the hearing officer, including a funding deficit, a potential takeover of the Board’s finances, or any condition requiring the termination of Johnson’s employment. In Archible and Soleyn, the employees were terminated based on misconduct. 33 So.3d at 591. In the present case, there are no specific allegations of misconduct for Johnson to defend against. See Huntsville City Bd. of Educ. v. Stranahan, 130 So.3d 204, 208 (Ala.Civ.App.2013). Additionally, no evidence was presented indicating that the Board had relied on a funding deficit or a potential State takeover as an independent reason for terminating Johnson’s employment; rather, those reasons were referred to only in relation to the financial difficulties that were cited in Johnson’s termination notice and that required the implementation of the supplemental RIF plan.
Johnson further asserts that the Board failed to inform her of the reasons that her position as a printer was selected to be terminated. As discussed above, the courts may not usurp the role of the school systems in selecting the specific employees to be terminated. Thus, Johnson’s assertion that the Board must specify the reasons regarding the termination of employment of each employee affected by the supplemental RIF is without merit.
Johnson does not argue that financial difficulties did not require the implementation of the supplemental RIF; rather, she *476 argues that all the reasons that led to those difficulties were not listed in the Board’s notice to her. We conclude that sufficient notice was given to Johnson regarding the proposed termination of her employment, and we thus cannot agree with Johnson that the content of that notice would independently warrant the setting aside of the termination of her employment (a determination that, we note, the hearing officer was similarly unwilling to make).
APPEAL — REVERSED AND REMANDED. '
CROSS-APPEAL — AFFIRMED.
THOMAS, MOORE, and DONALDSON, JJ„ concur.
THOMPSON, P.J., concurs in the result, without writing.

. The former FDA was repealed and replaced by the Students First Act, Ala.Code 1975, § 16-24C-1 et seq., effective July 1, 2011. Because the Board terminated Johnson's employment before July 1, 2011, and because the Students First Act does not apply retroactively, we apply the former FDA in the present case. See Board of Sch. Comm'rs of Mobile Cntry. v. Christopher, 97 So.3d 163, 166-67 (Ala.Civ.App.2012).

. A transcript of Dr. Pouncey's deposition testimony was submitted to the hearing officer as part of the record. Dr. Pouncey did not testify at the hearing; all references to Dr. Pouncey's testimony refer to testimony given in his deposition.

. A transcript of Dr. Richardson’s deposition testimony was submitted to the hearing officer as part of the record. Dr. Richardson did not testify at the hearing; all references to Dr. Richardson’s testimony refer to testimony given in his deposition.

. Johnson first raised the argument that she had received a defective termination notice in her post-hearing brief. Without conclusively deciding whether Johnson properly preserved the issue for appellate review, we address the argument out of an abundance of caution.